# EXHIBIT B

RP-2018-560604
12/17/2018   ER   $164.00

6013775

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST AND SECURITY AGREEMENT
### (With Collateral Assignment of Rents)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | Effective Date: December 14, 2018 |
| COUNTY OF HARRIS | § | |

### INTRODUCTION

Riverway Title
GF 18121G.CS

This instrument ("Deed of Trust") is a deed of trust from:

Mortgagor Name(s):  3000 SMITH, LTD.
Address(es):  3000 Smith Street, Ste 1
Houston, Texas 77006

(called the "Mortgagor", "Debtor" and "Assignor", whether one or more) to:

Trustee Name:  Derrick Ragland
Address:  P.O. Box 7889
The Woodlands, Texas 77387-7889

as trustee (called the "Trustee"), for the use and benefit of:

Mortgagee Name:  WOODFOREST NATIONAL BANK
Address:  P.O. Box 7889,
The Woodlands, Texas, 77387-7889,
Attn: Loan Operations

(called the "Mortgagee", "Secured Party" and "Assignee"), a security agreement between Debtor and Secured Party and a collateral assignment of rents from Assignor to Assignee.

## WITNESSETH:

### ARTICLE 1
### IDENTIFICATION OF THE MORTGAGED PROPERTY AND ITS CONVEYANCE TO THE TRUSTEE.

**Section 1.1     Mortgagor's Conveyance of the Mortgaged Property to the Trustee to Secure the Debt.** To secure payment of principal, lawful interest and other elements of the Debt described

America:0028429/00013:70413922v2



**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST AND SECURITY AGREEMENT
### (With Collateral Assignment of Rents)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | Effective Date: December 14, 2018 |
| COUNTY OF HARRIS | § | |

### INTRODUCTION

This instrument ("Deed of Trust") is a deed of trust from:

Mortgagor Name(s):  3000 SMITH, LTD.
Address(es):  3000 Smith Street, Ste 1
  Houston, Texas 77006

(called the "Mortgagor", "Debtor" and "Assignor", whether one or more) to:

Trustee Name:  Derrick Ragland
Address:  P.O. Box 7889
  The Woodlands, Texas 77387-7889

as trustee (called the "Trustee"), for the use and benefit of:

Mortgagee Name:  WOODFOREST NATIONAL BANK
Address:  P.O. Box 7889,
  The Woodlands, Texas, 77387-7889,
  Attn: Loan Operations

(called the "Mortgagee", "Secured Party" and "Assignee"), a security agreement between Debtor and Secured Party and a collateral assignment of rents from Assignor to Assignee.

## WITNESSETH:

## ARTICLE 1
### IDENTIFICATION OF THE MORTGAGED PROPERTY AND ITS CONVEYANCE TO THE TRUSTEE

Section 1.1    **Mortgagor's Conveyance of the Mortgaged Property to the Trustee to Secure the Debt.**  To secure payment of principal, lawful interest and other elements of the Debt described

and defined in <u>Article 2</u>, in consideration of the uses and trusts (the "<u>Trust</u>") established and continued by this Deed of Trust and in consideration of $10 and other valuable consideration paid before delivery of this Deed of Trust by each of Trustee and Mortgagee to Mortgagor, who hereby acknowledges its receipt and that it is reasonably equivalent value for this Deed of Trust and all other security and rights given by Mortgagor, Mortgagor hereby Grants, Sells, Conveys, Transfers, Assigns, Sets Over, Confirms and Delivers unto the Trustee and to his successors or substitutes in the Trust, the following property (collectively, the "<u>Mortgaged Property</u>"):

(a)    **Real Property.**  All of the real estate and premises described or referred to on <u>Exhibit A</u>, together with (i) all of Mortgagor's estate, right, title and interest in and to all easements and rights-of-way for utilities, ingress or egress to or from said property and (ii) all interests of Mortgagor in and to all streets, rights-of-way, alleys or strips of land adjoining said property (collectively, the "<u>Real Property</u>").

(b)    **Buildings and Improvements.**  All existing and all future buildings on the Real Property and other improvements to it, all of which Mortgagor and Mortgagee hereby irrevocably declare to be real estate and part of the Real Property, including all water, sewage and drainage facilities, wells, treatment plants, supply, collection and distribution systems, paving, landscaping and other improvements (collectively, the "<u>Improvements</u>").

(c)    **Fixtures, Equipment and Supplies.**  All fixtures, equipment and supplies (the "<u>Fixtures and Equipment</u>") now or hereafter attached to, used, intended or acquired for use for, or in connection with, the construction, maintenance, operation or repair of the Real Property or Improvements, or for the present or future replacement or replenishment of used portions of it, and all related parts, filters and supplies, including, but not limited to, all heating, lighting, cooling, ventilating, air conditioning, environment control, refrigeration, plumbing, incinerating, water-heating, cooking, pollution control, gas, electric, solar, nuclear, computing, monitoring, measuring, controlling, distributing and other equipment and fixtures, and all renewals and replacements of them, all substitutions for them and all additions and accessions to them, all of which Mortgagor and Mortgagee hereby also irrevocably declare to be real estate and part of the Real Property.

(d)    **Leases and Rental.**  All Leases and Rental (as such terms are defined in Section 9.1 below).

(e)    **Utilities.**  All wastewater, fresh water and other utilities capacity and facilities (the "<u>Utilities Capacity</u>") available or allocable to the Real Property and Improvements or dedicated to or reserved for them pursuant to any system, program, contract or other arrangement with any public or private utility, and all related or incidental licenses, rights and interests, whether considered to be real, personal or mixed property, including the right and authority to transfer or relinquish any or all such rights and the right to any credit, refund, reimbursement or rebate for utilities facilities construction or installation or for any reservation fee, standby fee or capital recovery charge promised, provided or paid for by Mortgagor or any of Mortgagor's predecessors or Affiliates (defined below), to the full extent now allocated or allocable to the Real Property or Improvements, plus all additional Utilities Capacity, if any, not dedicated or reserved to the Real Property or Improvements but which is now or hereafter owned or controlled by Mortgagor or by anyone (an "<u>Affiliate</u>", whether a natural person or an entity) who directly or through one or more intermediaries controls, is controlled by or is under common

2

control with Mortgagor, to the full extent that such additional Utilities Capacity is necessary to allow development, marketing and use of the Real Property or Improvements for their highest and best use.

(f) **After-acquired Property.** All estate, right, title and interest acquired by Mortgagor in or to the Real Property, Improvements, Fixtures and Equipment, Leases, Rental and Utilities Capacity after execution of this Deed of Trust.

(g) **Appurtenances.** Any and all rights and appurtenances (the "Appurtenances") belonging, incident or appertaining to the Real Property, Improvements, Fixtures and Equipment, Leases, Rental or Utilities Capacity or any part of them.

(h) **Oil and Gas.** All existing and future minerals, oil, gas and other hydrocarbon substances in, upon, under or through the Real Property.

(i) **Reversions and Remainders.** Any and all rights and estates in reversion or remainder to the Real Property, Improvements, Fixtures and Equipment, Leases, Rental, Utilities Capacity or Appurtenances or any part of them.

(j) **Contractual Rights.** All contracts (including contracts for the sale or exchange of all or any portion of the Real Property or the Improvements), franchises, licenses and permits whether executed, granted or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to or connected with the development or sale of the Real Property or the Improvements, whether now or at any time hereafter existing, and all amendments and supplements thereto and renewals and extensions thereof at any time made, and all rebates, refunds, escrow accounts and funds, or deposits and all other sums due or to become due under and pursuant thereto and all powers, privileges, options and Mortgagor's other benefits thereunder.

(k) **Other Estates and Interests.** All other estates, easements, interests, licenses, rights, titles, powers or privileges of every kind and character which Mortgagor now has, or at any time hereafter acquires, in and to any of the foregoing, including the proceeds from condemnation, or threatened condemnation, and the proceeds of any and all insurance covering any part of the foregoing; and all related parts, accessions and accessories to any of the foregoing and all replacements or substitutions therefor, as well as all other Improvements, Fixtures and Equipment, Leases, Rental, Utilities Capacity and Appurtenances now or hereafter placed thereon or accruing thereto.

Section 1.2  **Habendum and Title Warranty.**  TO HAVE AND TO HOLD the Mortgaged Property, together with every right, privilege, hereditament and appurtenance belonging or appertaining to it, unto the Trustee, his successors or substitutes in the Trust and his or their assigns, forever. Mortgagor represents that Mortgagor is the lawful owner of the Mortgaged Property with good right and authority to mortgage and convey it, and that the Mortgaged Property is free and clear of all liens, claims and encumbrances except only those expressly set forth in a mortgagee policy of title insurance issued in favor of Mortgagee relating to this Deed of Trust or otherwise expressly approved by Mortgagee in writing. Mortgagor hereby binds Mortgagor and Mortgagor's successors and assigns to forever WARRANT and DEFEND the Mortgaged Property and every part of it unto the Trustee, his successors or substitutes in the Trust, and his or their assigns, against

America:0028429/00013:70413922v2

the claims and demands of every person whomsoever lawfully claiming or to claim it or any part of it (such warranty to supersede any provision contained in this Deed of Trust limiting the liability of Mortgagor).

# ARTICLE 2
## THE DEBT SECURED

**Section 2.1     Conveyance in Trust to Secure Designated Obligations.**  This conveyance to the Trustee is **in trust** to secure all of the following present and future debt and obligations:

(a)     **Note.**  All indebtedness now or hereafter evidenced and to be evidenced by (i) that certain Note (Real Estate Term Loan) dated concurrently herewith in the face amount of Three Million Two Hundred Thousand Dollars ($3,200,000.00), bearing interest at the rate or rates therein stated, principal and interest payable to the order of Mortgagee on the dates therein stated, with final payment due on December 14, 2023 executed by Mortgagee ("Borrower"), (ii) that certain Note (Revolving Loans) dated concurrently herewith in the face amount of One Million Dollars ($1,000,000.00), bearing interest at the rate or rates therein stated, principal and interest payable to the order of Mortgagee on the dates therein stated, with final payment due on December 14, 2020, executed by Mortgagor, and (iii) any and all past, concurrent or future modifications, extensions, renewals, rearrangements, replacements and increases of such notes (collectively, the "Note").

(b)     **Credit Agreement.**  All obligations and indebtedness of Mortgagor now or hereafter created or incurred under the Credit Agreement dated concurrently herewith between Mortgagor and Mortgagee, as the same may be amended, supplemented, restated or replaced from time to time (collectively, the "Credit Agreement").

(c)     **Other Specified Obligations.**  All other obligations, if any, described or referred to in any other place in this Deed of Trust.

(d)     **Advances and Other Obligations Pursuant to this Deed of Trust's Provisions.**  Any and all sums and the interest which accrues on them as provided in this Deed of Trust which Mortgagee may advance or which Mortgagor may owe Mortgagee pursuant to this Deed of Trust on account of Mortgagor's failure to keep, observe or perform any of Mortgagor's covenants under this Deed of Trust.

(e)     **Obligations under Credit Documents.**  All present and future debts and obligations under or pursuant to (1) any papers ("Credit Documents") now or in the future governing, evidencing, guaranteeing or securing or otherwise relating to payment of all or any part of the debt evidenced by the Note or (2) all supplements, amendments, restatements, renewals, extensions, rearrangements, increases, expansions or replacements of them.

(f)     **Related Indebtedness.**  All other loans or advances not otherwise specifically described in this Section now or hereafter made for the purpose of paying costs of developing, constructing, improving or operating all or any part of the Mortgaged Property.

(g)     **Hedging Indebtedness and Banking Services.**  All obligations now or hereafter owing to Mortgagee (or an affiliate of Mortgagee) under a Swap Agreement or under an

4

agreement governing Banking Services.  The term "Swap Agreement" as used herein means any agreement with respect to any swap, forward, future or derivative transaction or option or similar agreement involving, or settled by reference to, one or more rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value or any similar transaction or any combination of these transactions; provided that no phantom stock or similar plan providing for payments only on account of services provided by current or former directors, officers, employees or consultants of Mortgagor or any other person or entity now or hereafter primarily or secondarily obligated to pay all or any part of the Debt (Mortgagor and each such other person or entity being herein called an "Obligor") shall be a Swap Agreement.  The term "Banking Service" as used herein means each and any of the following bank services provided to any Obligor by Lender or any of its affiliates: (a) commercial credit cards, (b) stored value cards and (c) treasury management services (including, without limitation, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services).

(h)    **All Other Debt.**  All of Mortgagor's other present and future debt or other obligations now or hereafter held or owned by Mortgagee, whether direct or indirect, primary or secondary, fixed or contingent, several, joint or joint and several, and regardless of how incurred, evidenced, guaranteed or otherwise secured, including any present or future debt under any credit or loan agreement, any letter of credit application, any reimbursement, repurchase, reverse repurchase, swap or other agreement which absolutely or contingently creates any financial obligation, any guaranty or any other papers previously, concurrently or later executed by Mortgagor, or accepted by Mortgagee as binding upon Mortgagor.  Mortgagor and Mortgagee presently contemplate that Mortgagee may at Mortgagee's election lend sums or extend other financial accommodations to Mortgagor or for Mortgagor's account or benefit in the future and may acquire and become the owner and holder of other debt or obligations of Mortgagor from time to time, but that Mortgagee has no obligation to do so.  Mortgagor agrees that if Mortgagor should thus become indebted to Mortgagee in any such additional sums (except in cases where Mortgagor and Mortgagee have expressly agreed in writing to a different rate, a different maturity or both) all such other or future debt shall be due and payable on demand, the principal of such debt shall bear interest at the Past Due Rate (as defined in Article 7 below) from the date of its accrual, however it accrues, until paid, and all such other debt, both principal and interest, shall be secured by this Deed of Trust as well as by any and all other security which Mortgagee may now or hereafter hold for it.

Section 2.2    **Debt Defined.**  The term "Debt" means and includes every Note and all other debt and obligations described or referred to in Section 2.1 (including obligations owing to Mortgagee (or an affiliate of Mortgagee) under a Swap Agreement or under an agreement governing Banking Services).    The Debt includes interest and other obligations accruing or arising after (a) commencement of any case under any bankruptcy or similar laws by or against Mortgagor or any other Obligor or (b) the obligations of any Obligor shall cease to exist by operation of law or for any other reason.  The Debt also includes all reasonable attorneys' fees and any other expenses incurred by Mortgagee in enforcing any of the Credit Documents.  All liens, assignments and security interests created, represented or continued by this Deed of Trust, both present and future, shall be first, prior and superior to any lien, assignment, security interest, charge, reservation of title or other interest heretofore, concurrently or subsequently suffered or granted by Mortgagor or Mortgagor's

America:0028429/00013:70413922v2

successors or assigns, except only statutory super priority liens for nondelinquent taxes and those other liens (if any) expressly identified and stated in this Deed of Trust to be senior.

# ARTICLE 3
## SECURITY AGREEMENT

Section 3.1     **Grant of Security Interest.**  Without limiting any of the provisions of this Deed of Trust, Mortgagor, as Debtor, and referred to in this Article as "<u>Debtor</u>" (whether one or more) hereby grants to Mortgagee, as Secured Party, and referred to in this Article as "<u>Secured Party</u>" (whether one or more), a security interest in all of Debtor's remedies, powers, privileges, rights, titles and interests (including all of Debtor's power, if any, to pass greater title than it has itself) of every kind and character now owned or hereafter acquired, created or arising in and to (i) the Mortgaged Property (including both that now and that hereafter exist) to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code of the state or states where the Mortgaged Property is situated (the "<u>UCC</u>"), (ii) all equipment, accounts, general intangibles, fixtures, inventory, chattel paper, notes, documents and other personal property used, intended or acquired for use, on--or in connection with the use or operation of--the Mortgaged Property, or otherwise related to the Mortgaged Property, and all products and proceeds of it, including all Rental and all security deposits under Leases now or at any time hereafter held by or for Debtor's benefit, all monetary deposits which Debtor has been required to give to any public or private utility with respect to utility services furnished to the Mortgaged Property, all funds, accounts, instruments, accounts receivable, documents, trademarks, trade names and symbols used in connection therewith, and notes or chattel paper arising from or by virtue of any transactions related to the Mortgaged Property, all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Mortgaged Property, and all guaranties and warranties obtained with respect to all improvements, equipment, furniture, furnishings, personal property and components of any thereof located on or installed at the Mortgaged Property and (iii) the following described property:

(a)     **Contracts.**  All contracts now or hereafter entered into by and between Debtor and any Original Contractor (as such term is defined in Section 53.001(7) of the Texas Property Code) or between Debtor and any other party, as well as all right, title and interest of Debtor under any subcontracts, providing for the construction (original, restorative or otherwise) of any improvements to or on any of the Mortgaged Property or the furnishing of any materials, supplies, equipment or labor in connection with any such construction.

(b)     **Plans.**  All of the plans, specifications and drawings (including plot plans, foundation plans, floor plans, elevations, framing plans, cross-sections of walls, mechanical plans, electrical plans and architectural and engineering plans and architectural and engineering studies and analyses) heretofore or hereafter prepared by any architect, engineer or other design professional, in respect of any of the Mortgaged Property.

(c)     **Design, etc. Agreements.**  All agreements now or hereafter entered into with any person or entity in respect of architectural, engineering, design, management, development or consulting services rendered or to be rendered in respect of planning, design, inspection or supervision of the construction, management or development of any of the Mortgaged Property.

6

(d)     **Lender or Investor Commitments.**  Any commitment issued by any lender or investor other than Mortgagee to finance or invest in any of the Mortgaged Property.

(e)     **Bonds.**  Any completion bond, performance bond and labor and material payment bond and any other bond relating to the Mortgaged Property or to any contract providing for construction of improvements to any of the Mortgaged Property.

together with all substitutions for and proceeds of any of the foregoing received upon the rental, sale, exchange, transfer, collection or other disposition or substitution of it and together with all general intangibles now owned by Debtor or existing or hereafter acquired, created or arising (whether or not related to any of the foregoing Property).  All the property described or referred to in this Section is collectively referred to as the "Collateral".  The Mortgaged Property and the Collateral are collectively referred to as the "Property".  In the event of any express inconsistency between the provisions of this Section and Article 9 regarding any Lease or Rental, the provisions of Article 9, to the extent valid, enforceable and in effect, shall govern and control.

Section 3.2     **Debtor's Covenants Concerning Personalty Subject to the UCC.**  Debtor covenants and agrees with Secured Party that in addition to and cumulative of any other remedies granted in this Deed of Trust to Secured Party or the Trustee, upon or at any time after the occurrence of an Event of Default (defined in Article 6):

(a)     Secured Party is authorized, in any legal manner and without breach of the peace, to take possession of the Collateral (Debtor hereby WAIVING all claims for damages arising from or connected with any such taking) and of all books, records and accounts relating thereto and to exercise without interference from Debtor any and all rights which Debtor has with respect to the management, possession, operation, protection or preservation of the Collateral, including the right to sell or rent the same for the account of Debtor and to deduct from such sale proceeds or such rents all costs, expenses and liabilities of every character incurred by Secured Party in collecting such sale proceeds or such rents and in managing, operating, maintaining, protecting or preserving the Collateral and to apply the remainder of such sales proceeds or such rents on the Debt in such manner as Secured Party may elect.  Before any sale, Secured Party may, at its option, complete the processing of any of the Collateral and/or repair or recondition the same to such extent as Secured Party may deem advisable and any sums expended therefor by Secured Party shall be reimbursed by Debtor.  Secured Party may take possession of Debtor's premises to complete such processing, repairing and/or reconditioning, using the facilities and other property of Debtor to do so, to store any Collateral and to conduct any sale as provided for herein, all without compensation to Debtor.  All costs, expenses, and liabilities incurred by Secured Party in collecting such sales proceeds or such rents, or in managing, operating, maintaining, protecting or preserving such properties, or in processing, repairing and/or reconditioning the Collateral if not paid out of such sales proceeds or such rents as hereinabove provided, shall constitute a demand obligation owing by Debtor and shall bear interest from the date of expenditure until paid at the Past Due Rate (as defined in Article 7 below), all of which shall constitute a portion of the Debt.  If necessary to obtain the possession provided for above, Secured Party may invoke any and all legal remedies to dispossess Debtor, including specifically one or more actions for forcible entry and detainer.  In connection with any action taken by Secured Party pursuant to this Section, Secured Party shall not be liable for any loss sustained by Debtor resulting from any failure to sell or let the Collateral, or any part thereof, or from other

7

act or omission of Secured Party with respect to the Collateral unless such loss is caused by the willful misconduct and bad faith of Secured Party, nor shall Secured Party be obligated to perform or discharge any obligation, duty, or liability under any sale or lease agreement covering the Collateral or any part thereof or under or by reason of this instrument or the exercise of rights or remedies hereunder.

(b)     Secured Party may, without notice except as hereinafter provided, sell the Collateral or any part thereof at public or private sale (with or without appraisal or having the Collateral at the place of sale) for cash, upon credit, or for future delivery, and at such price or prices as Secured Party may deem best, and Secured Party may be the purchaser of any and all of the Collateral so sold and may apply upon the purchase price therefor any of the Debt and thereafter hold the same absolutely free from any right or claim of whatsoever kind. Secured Party is authorized at any such sale, if Secured Party deems it advisable or is required by applicable law so to do, to disclaim and to refuse to give any warranty, and to impose such other limitations or conditions in connection with any such sale as Secured Party deems necessary or advisable in order to comply with applicable law. Upon any such sale Secured Party shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral so sold. Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right of whatsoever kind, including any equity or right of redemption, stay or appraisal which Debtor has or may have under any rule of law or statute now existing or hereafter adopted. To the extent notice is required by applicable law, Secured Party shall give Debtor written notice at the address set forth herein (which shall satisfy any requirement of notice or reasonable notice in any applicable statute) of Secured Party's intention to make any such public or private sale. Such notice (if any is required by applicable law) shall be personally delivered or mailed, postage prepaid, at least ten (10) calendar days before the date fixed for a public sale, or at least ten (10) calendar days before the date after which the private sale or other disposition is to be made, unless the Collateral is of a type customarily sold on a recognized market, is perishable or threatens to decline speedily in value. Such notice (if any is required by applicable law), in case of public sale, shall state the time and place fixed for such sale or, in case of private sale or other disposition other than a public sale, the time after which the private sale or other such disposition is to be made. Any public sale shall be held at such time or times, within the ordinary business hours and at such place or places, as Secured Party may fix in the notice of such sale. At any sale the Collateral may be sold in one lot as an entirety or in separate parcels as Secured Party may determine. Secured Party shall not be obligated to make any sale pursuant to any such notice. Secured Party may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at any time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Secured Party until the selling price is paid by the purchaser thereof, but Secured Party shall incur no liability in case of the failure of such purchaser to take up and pay for the Collateral so sold, and in case of any such failure, such Collateral may again be sold upon like notice. Each and every method of disposition described in this Section shall constitute disposition in a commercially reasonable manner. Each Obligor, to the extent applicable, shall remain liable for any deficiency.

(c)      Secured Party shall have all the rights of a secured party after default under the Uniform Commercial Code of Texas and in conjunction with, in addition to or in substitution for those rights and remedies:

(i)      Secured Party may require Debtor to assemble the Collateral and make it available at a place Secured Party designates which is mutually convenient to allow Secured Party to take possession or dispose of the Collateral; and

(ii)      it shall not be necessary that Secured Party take possession of the Collateral or any part thereof before the time that any sale pursuant to the provisions of this Article is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; and

(iii)      before application of proceeds of disposition of the Collateral to the Debt, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Secured Party, each Obligor, to the extent applicable, to remain liable for any deficiency; and

(iv)      the sale by Secured Party of less than the whole of the Collateral shall not exhaust the rights of Secured Party hereunder, and Secured Party is specifically empowered to make successive sale or sales hereunder until the whole of the Collateral shall be sold; and, if the proceeds of such sale of less than the whole of the Collateral shall be less than the aggregate of the indebtedness secured hereby, this Deed of Trust and the security interest created hereby shall remain in full force and effect as to the unsold portion of the Collateral just as though no sale had been made; and

(v)      in the event any sale hereunder is not completed or is defective in the opinion of Secured Party, such sale shall not exhaust the rights of Secured Party hereunder and Secured Party shall have the right to cause a subsequent sale or sales to be made hereunder; and

(vi)      any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to nonpayment of any indebtedness or as to the occurrence of any default, or as to Secured Party having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and the Collateral to be sold having been duly given, as to any other act or thing having been duly done by Secured Party, shall be taken as prima facie evidence of the truth of the facts so stated and recited; and

(vii)      Secured Party may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Secured Party, including the sending of notices and the conduct of sale, but in the name and on behalf of Secured Party; and

(viii)      demand of performance, advertisement and presence of property at sale are hereby WAIVED and Secured Party is hereby authorized to sell hereunder any evidence of debt it may hold as security for the secured indebtedness. All demands and presentments of any kind or nature are expressly WAIVED by Debtor. Debtor WAIVES the right to require Secured Party to pursue any other remedy for the benefit of Debtor and agrees that Secured Party may

9

proceed against any Obligor for the amount of the Debt owed to Secured Party without taking any action against any other Obligor or any other person or entity and without selling or otherwise proceeding against or applying any of the Collateral in Secured Party's possession.

Section 3.3     **UCC Rights are not Exclusive.**  Should Secured Party elect to exercise its rights under the UCC as to part of the personal property or fixtures described in this Deed of Trust, such election shall not preclude Secured Party or the Trustee from exercising any or all of the rights and remedies granted by the other Articles of this Deed of Trust as to the remaining personal property or fixtures.

Section 3.4     **Deed of Trust is Also Financing Statement.**  Secured Party may, at its election, at any time after delivery of this Deed of Trust, file an original of this Deed of Trust as a financing statement.  Secured Party's signature may be placed between the last sentence of this Deed of Trust and Debtor's acknowledgment or may follow Debtor's acknowledgment.  Secured Party's signature need not be acknowledged and is not necessary to the effectiveness of this Deed of Trust as a deed of trust, mortgage, assignment, pledge, security agreement or (unless otherwise required by applicable law) as a financing statement.

Section 3.5     **No other Financing Statements on the Collateral.**  So long as any amount remains unpaid on the Debt, Debtor will not execute and there will not be filed in any public office any financing statements affecting the Collateral other than financing statements in favor of Secured Party under this Deed of Trust, unless prior written specific consent and approval of Secured Party shall have been first obtained.

Section 3.6     **Secured Party May File Financing and Continuation Statements.**  Secured Party is authorized to file this Deed of Trust, a financing statement or statements and one or more continuation statements in any jurisdiction where Secured Party deems it necessary, and at Secured Party's request, Debtor will pay the costs of filing or recording them, in all public offices at any time and from time to time whenever filing or recording of this Deed of Trust, any financing statement or any continuation statement is deemed by Secured Party or its counsel to be necessary or desirable.

Section 3.7     **Fixtures.**  Certain of the Collateral is or will become "<u>fixtures</u>" (as that term is defined in the UCC) on the Real Property, and when this Deed of Trust is filed for record in the real estate records of the county where such fixtures are situated, it shall also automatically operate as a financing statement upon such of the Collateral which is or may become fixtures.

Section 3.8     **Assignment of Non-UCC Personal Property.**  To the extent that any of the Collateral is not subject to the UCC of the state or states where it is situated, Debtor hereby assigns to Secured Party all of Debtor's right, title and interest in the Collateral to secure the Debt.  Release of the lien of this Deed of Trust shall automatically terminate this assignment.

Section 3.9     **Debtor's Warranties Concerning Collateral.**  Debtor warrants and represents to Secured Party that Debtor is the legal and equitable owner and holder of the Collateral free of any adverse claim and free of any security interest or encumbrance except only for the security interest granted hereby in the Collateral and those other security interests (if any) expressly referred to or described in this Deed of Trust (such warranty to supersede any provision contained in this Deed of Trust limiting the liability of Mortgagor).  Debtor agrees to defend the Collateral and its proceeds

10

against all claims and demands of any person at any time claiming the Collateral, its proceeds or any interest in either. Debtor also warrants and represents that there are no financing statements directly or indirectly affecting the Collateral or any part of it now on file in any public office except only those statements (if any) true and correct copies of which Debtor has actually delivered to Secured Party.

Section 3.10   **Certain Powers of Secured Party**.  Debtor hereby authorizes and directs each account debtor and each other person or entity obligated to make payment in respect of any of the Collateral (each a "Collateral Obligor") to pay over to Secured Party, its officers, agents or assigns, upon demand by Secured Party, all or any part of the Collateral without making any inquiries as to the status or balance of the secured indebtedness and without any notice to or further consent of Debtor.  Debtor hereby agrees to indemnify each Collateral Obligor and hold each Collateral Obligor harmless from all expenses and losses which it may incur or suffer as a result of any payment it makes to Secured Party pursuant to this paragraph.  To facilitate the rights of Secured Party hereunder, Debtor hereby authorizes Secured Party, its officers, employees, agents or assigns:

(a)   to notify Collateral Obligors of Secured Party's security interest in the Collateral and to collect all or any part of the Collateral without further notice to or further consent by Debtor, and Debtor hereby constitutes and appoints Secured Party the true and lawful attorney of Debtor (such agency being coupled with an interest), irrevocably, with power of substitution, in the name of Debtor or in its own name or otherwise, to take any of the actions described in the following clauses (b), (c), (d), (e), (f) and (g);

(b)   to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all amounts which may be or become due or payable under the Collateral and to settle and/or adjust all disputes and/or claims directly with any Collateral Obligor and to compromise, extend the time for payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, on such terms and conditions as Secured Party may determine (without thereby incurring responsibility to or discharging or otherwise affecting the liability of Debtor to Secured Party under this Deed of Trust or otherwise);

(c)   to direct delivery of, receive, open and dispose of all mail addressed to Debtor and to execute, sign, endorse, transfer and deliver (in the name of Debtor or in its own name or otherwise) any and all receipts or other orders for the payment of money drawn on the Collateral and all notes, acceptances, commercial paper, drafts, checks, money orders and other instruments given in payment or in part payment thereof and all invoices, freight and express bills and bills of lading, storage receipts, warehouse receipts and other instruments and documents in respect of any of the Collateral and any other documents necessary to evidence, perfect and realize upon the security interests and obligations of this Deed of Trust;

(d)   in its discretion to file any claim or take any other action or proceeding which Secured Party may deem necessary or appropriate to protect and preserve the rights, titles and interests of Secured Party hereunder;

(e)   to file financing statements, and to sign the name of Debtor to drafts against Collateral Obligors, assignments or verifications of any of the Collateral and notices to Collateral Obligors;

11

(f)     to station one or more representatives of Secured Party on Debtor's premises for the purpose of exercising any rights, benefits or privileges available to Secured Party hereunder or under any of the Credit Documents or at law or in equity, including receiving collections and taking possession of books and records relating to the Collateral; and

(g)     to cause title to any or all of the Collateral to be transferred into the name of Secured Party or any nominee or nominees of Secured Party.

The powers conferred on Secured Party pursuant to this Section are conferred solely to protect Secured Party's interest in the Collateral and shall not impose any duty or obligation on Secured Party to perform any of the powers herein conferred. No exercise of any of the rights provided for in this Section shall constitute a retention of collateral in full or partial satisfaction of the indebtedness as provided for in the Uniform Commercial Code of Texas.

Section 3.11   **Standard of Care.**  Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral in its possession if it takes such action for that purpose as Debtor requests in writing, but failure of Secured Party to comply with such request shall not of itself be deemed a failure to exercise reasonable care, and no failure of Secured Party to take any action not so requested by Debtor shall be deemed a failure to exercise reasonable care in the custody or preservation of any such Collateral.

Section 3.12   **Change Terms, Release Collateral.**   Secured Party may extend the time of payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, without thereby incurring responsibility to Debtor or discharging or otherwise affecting any liability of Debtor. Secured Party shall not be required to take steps necessary to preserve any rights against prior parties to any of the Collateral.

# ARTICLE 4
## MORTGAGOR'S COVENANTS

Section 4.1    **Covenants for the Benefit of Mortgagee.**  To better secure the Debt, Mortgagor covenants and agrees with the Trustee and his substitutes and successors in the Trust, for the use and benefit of Mortgagee and with the intent that the Trustee, Mortgagee or both may enforce these covenants, that:

(a)     **Liens, etc. and Remedies Cumulative.**  No lien, assignment, security interest, guaranty, right or remedy in favor of Mortgagee granted in, secured by or ancillary to this Deed of Trust shall be considered as exclusive, but each shall be cumulative of all others which Mortgagee or the Trustee may now or hereafter have.

(b)     **Mortgagor Waives Marshalling of Assets and Sale in Inverse Order of Alienation Rights.**  Mortgagor hereby irrevocably WAIVES all rights of marshalling of assets or sale in inverse order of alienation in the event of foreclosure of this or any other security.

(c)     **Mortgagor Will Correct Title Defects.**  If at any future time any defect should be found to exist in the title to any of the Property, Mortgagor agrees to promptly commence and thereafter diligently proceed to cure the defect and defend the title. If any lien or encumbrance junior, equal or superior in rank or priority to the lien of this Deed of Trust should be discovered

12

or arise at any time in the future then, unless Mortgagee is the only holder of it, or Mortgagee has given specific prior written consent to it, Mortgagor agrees to promptly discharge and remove it from the Mortgaged Property. Mortgagor will notify Mortgagee in writing within five (5) days of the time that Mortgagor becomes aware of the filing of any mortgage, lien, security interest, financing statement or other security device whatsoever against the Property.

(d)    **Insurance Requirements.** At all times before the final termination of this Deed of Trust, Mortgagor agrees to provide, maintain and keep in force title, casualty, liability and other insurance for the Property as required by Mortgagee and in any event Mortgagor will maintain the following specifically described insurance coverages:

(i)    **Casualty Coverage.** An all-risk policy of permanent property insurance insuring the Property against all risks of any kind or character except those permitted by Mortgagee in writing to be excluded from coverage thereunder.

(ii)    **Boiler Coverage.** A boiler and machinery insurance policy covering loss or damage to all portions of the Property comprised of air-conditioning and heating systems, other pressure vessels, machinery, boilers or high pressure piping.

(iii)    **Loss of Earnings Coverage.** An all-risk policy of insurance covering loss of earnings and/or rents from the Property in the event that the Property is not available for use or occupancy due to casualty, damage or destruction required to be covered by the policies of insurance described in (i) and (ii) above.

(iv)    **Liability Insurance.**    Commercial general liability, auto liability, umbrella or excess liability and worker's compensation insurance against claims for bodily injury, death or property damage occurring on, in or about the Mortgaged Property in an amount and containing terms acceptable to Mortgagee.

(v)    **Other Insurance Required.** Such other insurance against other insurable hazards, risks or casualties which at the time are commonly insured against in the case of owners and premises similarly situated, due regard being given to the financial condition of Mortgagor, the height and type of the Property, its construction, location, use and occupancy.

(e)    **Insurance Companies, Policies, Endorsements and Premium Payments.** Mortgagor agrees that all required insurance will be written on forms acceptable to Mortgagee and by companies having a Best's Insurance Guide Rating of not less than A and which are otherwise acceptable to Mortgagee, and that such insurance (other than third party liability insurance) shall be written or endorsed so that all losses are payable to Mortgagee. The original policies evidencing such insurance shall be delivered by Mortgagor to Mortgagee and held by Mortgagee, unless Mortgagee expressly consents to accept insurance certificates instead. Each such policy shall expressly prohibit cancellation or modification of insurance without thirty (30) days' written notice to Mortgagee. Mortgagor agrees to furnish due proof of payment of the premiums for all such insurance to Mortgagee promptly after each such payment is made and in any case at least fifteen (15) days before payment becomes delinquent.

America:0028429/00013:70413922v2

(f)     **Mortgagee's Rights to Collect Insurance Proceeds.**  Mortgagor hereby assigns to Mortgagee the exclusive right to collect any and all monies that may become payable under any insurance policies covering any part of the Property, or any risk to or about the Property.

(g)     **Effects of Foreclosure on Insurance Policies and Post-foreclosure Event Claims.**  Foreclosure of this Deed of Trust shall automatically constitute foreclosure upon all policies of insurance insuring any part of or risk to the Property and all claims thereunder arising from post-foreclosure events.  The successful bidder or bidders for the Property at foreclosure, as their respective interests may appear, shall automatically accede to all of Mortgagor's rights in, under and to such policies and all post-foreclosure event claims, and such bidder(s) shall be named as insured(s) on request, whether or not the trustee's deed or bill of sale to any such successful bidder mentions insurance.

(h)     **Application of Insurance Proceeds Collected Before Foreclosure.**  Unless an Event of Default has occurred and so long as Mortgagee is satisfied that the applicable proceeds (together with other funds deposited with Mortgagee by or on behalf of Mortgagor for the purpose of repair and restoration of the applicable damage or destruction) are sufficient to pay all costs of repair and restoration of the applicable damage or destruction, Mortgagee will hold all proceeds of insurance which was paid for by Mortgagor or by anyone other than Mortgagee or another holder of any of the Debt and which proceeds are actually received by Mortgagee before foreclosure (and such other funds deposited with Mortgagee) and will disburse the same as such repairs or restoration are made, upon such terms and conditions as Mortgagee may elect, and upon presentation of satisfactory evidence to Mortgagee that payment is being requested for permissible repair and restoration and without the imposition of any lien on the Property.  Any insurance proceeds remaining if Mortgagor and Mortgagee do not agree to the terms of the advance of the funds for repair and restoration within thirty (30) days after the event producing such funds, or if an Event of Default occurs, or after completion of the repair and restoration, shall be applied in payment of the Debt or, at the option of Mortgagee, shall be paid to Mortgagor or to such other person as is legally entitled to them.

(i)     **Application of Insurance Proceeds Collected After Foreclosure.**  Unless Mortgagee or Mortgagee's representative reserves at the foreclosure sale the right to collect any uncollected insurance proceeds recoverable for events occurring before foreclosure (in which event the successful bidder at the sale, if not Mortgagee, shall have no interest in such proceeds and Mortgagee shall apply them, if and when collected, to the Debt in such order and manner as Mortgagee shall then elect and remit any remaining balance to Mortgagor or to such other person or entity as is legally entitled to them), all proceeds of all such insurance which are not so reserved by Mortgagee at the foreclosure sale and are not actually received by Mortgagee until after foreclosure shall be the property of the successful bidder or bidders at foreclosure, as their interests may appear, and Mortgagor shall have no interest in them and shall receive no credit for them.

(j)     **Mortgagee Not Obligated to Require, Provide or Evaluate Insurance.**  Mortgagee shall have no duty to Mortgagor or anyone else to either require or provide any insurance or to determine the adequacy or disclose any inadequacy of any insurance.

(k)     **Mortgagee May Elect to Insure Only its Own Interests.**  If Mortgagee elects at any time or for any reason to purchase insurance relating to the Property, it shall have no

14

obligation to cause Mortgagor or anyone else to be named as an insured, to cause Mortgagor's or anyone else's interests to be insured or protected or to inform Mortgagor or anyone else that his or its interests are uninsured or underinsured.  **TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) MORTGAGOR IS REQUIRED TO: (I) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT MORTGAGEE SPECIFIES; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME MORTGAGEE AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) MORTGAGOR MUST, IF REQUIRED BY MORTGAGEE, DELIVER TO MORTGAGEE A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF MORTGAGOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), MORTGAGEE MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF MORTGAGOR AT MORTGAGOR'S EXPENSE.**

(l)     **Mortgagor Will Correct Defects, Provide Further Assurances and Papers.** Upon Mortgagee's request, Mortgagor will promptly correct any defect which hereafter may be discovered in the text, execution or acknowledgment of the Note, this Deed of Trust or any Credit Document or in the description of any of the Property, and will deliver such further assurances and execute such additional papers as in the opinion of Mortgagee or its legal counsel shall be necessary, proper or appropriate (1) to better convey and assign to the Trustee and Mortgagee all the Property intended or promised to be conveyed or assigned or (2) to properly evidence or give notice of the Debt or its intended or promised security.

(m)     **Mortgagor Will Pay Taxes and Impositions and Furnish Receipts.**   At Mortgagor's own cost and expense, Mortgagor agrees to pay and discharge all taxes, assessments, maintenance charges, permit fees, impact fees, development fees, capital recovery charges, utility reservation and standby fees and all other similar and dissimilar impositions of every kind and character ("Impositions") charged, levied, assessed or imposed against any interest in any of the Property, as they become payable and before they become delinquent. Mortgagor agrees to furnish due proof of such payment to Mortgagee promptly after payment and before delinquency.

(n)     **Mortgagor to Pay Monthly Tax and Insurance Deposits on Request.**  If and after Mortgagee requests it, Mortgagor agrees to pay the monthly tax and insurance premium deposits required by Article 8 and to provide Mortgagee any additional sums needed to pay the taxes and insurance premiums for the Property when due.

(o)     **Mortgagor Will Maintain Property and Won't Remove Improvements.** Mortgagor agrees to keep, preserve and maintain all elements of the Property in a good state of repair and condition and to keep all equipment and stores of supplies needed for its proper and full operation on the Property, well stocked and in good operating condition.  Mortgagor will not tear down, damage or attempt to remove, demolish or materially alter or enlarge any elements of the Property, or construct any new Improvements, without Mortgagee's prior written consent. Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien, assignments and security interests of this Deed of Trust, such Fixtures and Equipment as from time to time become worn out or obsolete, provided that either (a) simultaneously with or

15

before such removal any such equipment shall be replaced with other equipment of a value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance and from any reservation of title, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien, assignments and security interests of this Deed of Trust or (b) any net cash proceeds received from such disposition shall be paid over promptly to Mortgagee to be applied to the Debt in the order determined by Mortgagee in its sole discretion.  Mortgagor shall not grant, join in or consent to any lien, security interest, easement, license, use or other charge or interest covering or affecting all or any part of the Property or initiate, join in and consent to the change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Property or any part thereof without the prior written consent of Mortgagee.

(p)   **Mortgagor Will Protect Property from Mechanic's Liens.**  Mortgagor agrees to promptly pay all bills for labor and materials incurred in connection with the Property and to prevent the fixing of any lien against any part of the Property, even if it is inferior to this Deed of Trust, for any such bill which may be legally due and payable.  Mortgagor agrees to furnish due proof of such payment to Mortgagee after payment and before delinquency.

(q)   **Mortgagee's Inspection and Discussion Rights.**  Mortgagor agrees to permit Mortgagee and its agents, representatives and employees at all reasonable times to go upon, examine, inspect and remain on the Mortgaged Property, to assist and cooperate, and require Mortgagor's employees, agents and contractors to cooperate, with Mortgagee and to furnish to Mortgagee on request all pertinent information concerning the physical and economic condition, development and operation of the Mortgaged Property.  Mortgagee may discuss the Mortgaged Property directly with any of Mortgagor's officers and managers.

(r)   **Mortgagee May Grant Releases without Impairing Other Collateral or Rights.**  At all times, Mortgagee shall have the right to release any part of the Property or any other security from this Deed of Trust or any other security instrument or device without releasing any other part of the Property or any other security, without affecting Mortgagee's lien, assignment or security interest as to any property or rights not released and without affecting or impairing the liability of any maker, guarantor or surety on the Note or other obligation.

(s)   **Mortgagor Will Notify Mortgagee of Legal Proceedings and Defend Lien; Mortgagee May Act if Mortgagor Doesn't.**  Mortgagor will notify Mortgagee in writing promptly of the commencement of any legal proceedings affecting any part of the Property and will engage and pay legal counsel to answer and to defend and preserve Mortgagee's liens, rights and interests and their rank and priority.  If Mortgagor fails or refuses to promptly begin or to diligently continue any such acts, then Mortgagee may elect to do so and may take such action in behalf of Mortgagor, in Mortgagor's name and at Mortgagor's expense.

(t)   **If Mortgagor is not a Natural Person.**  If Mortgagor has represented to Mortgagee that Mortgagor is not a natural person, then it and its directors, partners, venturers, trustee(s) or principals agree to maintain its existence as such and to obtain and maintain all franchises and permits necessary for it continuously to be in good standing in the State of Texas and in the state of its organization (if not Texas) with full power and authority to conduct its

16

regular business and to own and operate the Mortgaged Property until final termination of this Deed of Trust.

(u)   **Legal Compliance, Governmental Notices.**  Mortgagor will operate the Property and conduct its business in full compliance with all requirements of governmental and quasi-governmental authorities having jurisdiction over Mortgagor or the Property and will comply with and punctually perform all of the covenants, agreements and obligations imposed upon it or the Property.  Mortgagor will furnish to Mortgagee copies of notices and reports received or sent by Mortgagor to or from each governmental and quasi-governmental authority within three (3) days of the receipt or giving thereof.

(v)   **Notice of Material Change.**  Immediately upon acquiring knowledge of any material adverse change in the assets, liabilities, financial condition, business, operations, affairs or circumstances of any Obligor, Mortgagor will notify Mortgagee in writing thereof, setting forth the nature of such change in reasonable detail.  Mortgagor will take, and will cause to be taken, all such steps as are necessary or appropriate to remedy promptly any such change.

(w)   **Notice of Default to Mortgagee.**  Immediately upon acquiring knowledge thereof, Mortgagor will notify Mortgagee by telephone (and confirm such notice in writing within two (2) days) of the existence of any Event of Default, specifying the nature and duration thereof and what action Mortgagor has taken, is taking and proposes to take with respect thereto.  In no event shall silence by Mortgagee be deemed a waiver of a default or of an Event of Default.  Mortgagor will take all such steps as are necessary or appropriate to remedy promptly any such default or Event of Default.

(x)   **Notice of Condemnation and Other Proceedings.**  Immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Property or any portion thereof, or any other proceedings arising out of injury or damage to the Property, or any portion thereof, Mortgagor will notify Mortgagee in writing of the pendency of such proceedings.  Mortgagee may participate in any such proceedings, and Mortgagor shall from time to time deliver to Mortgagee all instruments requested by it to permit such participation.  Mortgagor shall, at its expense, diligently prosecute any such proceedings, and shall consult with Mortgagee, its attorneys and experts, and cooperate with them in the carrying on or defense of any such proceedings.

(y)   **Manager.**  Mortgagor will, or will cause its managers to, do and perform any and all acts and things relating to the management, upkeep and operation of the Property as are customarily performed by managing agents and owners of properties comparable to the Property, similar situated, and shall otherwise operate the Property, or cause the Property to be operated, in a first-class efficient manner and in accordance with all legal requirements and the terms and conditions of this Deed of Trust and the other Credit Documents.  No management agreement shall be executed with any manager unless the manager and management agreement are previously approved in writing by Mortgagee.

Section 4.2   **Mortgagor Agrees to Pay or Reimburse Mortgagee's Expenses.**  To the extent not prohibited by applicable law, Mortgagor will pay all costs and expenses and reimburse Mortgagee for any and all expenditures of every character incurred or expended from time to time, regardless of whether an Event of Default shall have occurred, in connection with:

17

(a)  the preparation, negotiation, documentation, closing, renewal, revision, modification, increase, review or restructuring of any loan or credit facility secured by this Deed of Trust, including legal, accounting, auditing, architectural, engineering and inspection services and disbursements, or in connection with collecting or attempting to enforce or collect the Note or this Deed of Trust.

(b)  Mortgagee's evaluating, monitoring, administering and protecting the Property.

(c)  Mortgagee's creating, perfecting and realizing upon Mortgagee's security interest in and liens on the Property, and all costs and expenses relating to Mortgagee's exercising any of its rights and remedies under this Deed of Trust or any Credit Document or at law, including all appraisal fees, consulting fees, filing fees, taxes, brokerage fees and commissions, title review and abstract fees, litigation report fees, UCC search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, attorneys' fees, legal expenses, court costs, other fees and expenses incurred in connection with any complete or partial liquidation of the Property, and all fees and expenses for any professional services relating to the Property or any operations conducted in connection with it.

Provided, that no right or option granted by Mortgagor to Mortgagee or otherwise arising pursuant to any provision of this Deed of Trust, the Note or any Credit Document shall be deemed to impose or admit a duty on Mortgagee to supervise, monitor or control any aspect of the character or condition of the Property or any operations conducted in connection with it for the benefit of Mortgagor or any person or entity other than Mortgagee.  Mortgagor agrees to indemnify, defend and hold Mortgagee, its shareholders, directors, officers, agents, attorneys, advisors and employees (collectively "Indemnified Parties") harmless from and against any and all loss, liability, obligation, damage, penalty, judgment, claim, deficiency, expense, action, suit, cost and disbursement of any kind or nature whatsoever (including interest, penalties, attorneys' fees and amounts paid in settlement), **REGARDLESS OF WHETHER CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES,** imposed on, incurred by or asserted against the Indemnified Parties growing out of or resulting from any Credit Document or any transaction or event contemplated therein (except that such indemnity shall not be paid to any Indemnified Party to the extent that such loss, etc. directly results from the gross negligence or willful misconduct of that Indemnified Party).  If any person or entity (including Mortgagor or any of its affiliates) ever alleges gross negligence or willful misconduct by an Indemnified Party, the full amount of indemnification provided for in this Section shall nonetheless be paid upon demand, subject to later adjustment or reimbursement at such time--if any--as a court of competent jurisdiction enters a final judgment as to the extent and effect of the alleged gross negligence or willful misconduct.  Any amount to be paid under this Section by Mortgagor to Mortgagee shall be a demand obligation owing by Mortgagor to Mortgagee and shall bear interest from the date of expenditure until paid at the Past Due Rate.

## ARTICLE 5
## MORTGAGOR'S REPRESENTATIONS AND WARRANTIES

To induce Mortgagee to extend financial accommodations, including credit under the Note, Mortgagor makes the warranties and representations set forth in this Article.

America:0028429/00013:70413922v2

**Section 5.1     Consents.**  Mortgagor's execution, delivery and performance of this Deed of Trust and any other Credit Documents to which Mortgagor is a party do not and will not require (i) any consent of any other person or entity or (ii) any consent, license, permit, authorization or other approval (including foreign exchange approvals) of any court, arbitrator, administrative agency or other governmental authority, or any notice to, exemption by, any registration, declaration or filing with or the taking of any other action in respect of, any such court, arbitrator, administrative agency or other governmental authority.

**Section 5.2     Information Accurate.**  All information supplied to Mortgagee, and all statements made to Mortgagee by or on behalf of Mortgagor before, concurrently with or after Mortgagor's execution of this Deed of Trust are and will be true, correct, complete, valid and genuine in all material respects.  Each of Mortgagor's financial statements furnished to Mortgagee fairly present the financial condition of Mortgagor as of its date and for the period then ended.  No material adverse change has occurred in the financial condition reflected in any such statement since its date, and all assets listed on such statements are subject to Mortgagor's management, control and disposition and--except as shown therein--are available to satisfy any claims rightfully made pursuant to this Deed of Trust and any other Credit Documents to which Mortgagor is a party.

**Section 5.3     No False Representation.**  No representation or warranty contained in this Deed of Trust or any other Credit Document to which Mortgagor is a party and no statement contained in any certificate, schedule, list, financial statement or other papers furnished to Mortgagee by or on behalf of Mortgagor contains--or will contain--any untrue statement of material fact, or omits--or will omit--to state a material fact necessary to make the statements contained herein or therein not misleading.

**Section 5.4     Title.**  Mortgagor has good and indefeasible title to the Property, free and clear of any lien or security interest except only for liens and security interests which are either established or expressly permitted by this Deed of Trust or other Credit Documents.  Except as otherwise expressly permitted by this Deed of Trust, the lien and security interest of this Deed of Trust will constitute valid and perfected first and prior liens and security interests on the Property, subject to no other liens, security interests or charges whatsoever.  The Property is free from damage caused by fire or other casualty.

**Section 5.5     Taxes.**  Mortgagor has filed all tax returns required to be filed and paid all taxes shown thereon to be due, including interest and penalties, except for taxes being diligently contested in good faith and for payment of which adequate reserves have been set aside.

**Section 5.6     Litigation.**  There is no condemnation or other action, suit or proceeding pending--or, to the best of Mortgagor's knowledge, threatened--against or affecting Mortgagor or the Property, at law or in equity, or before or by any governmental authority, which might result in any material adverse change in Mortgagor's business or financial condition or in the Property or in Mortgagor's other property or Mortgagor's interest in it.

**Section 5.7     No Defaults.**  Mortgagor is not in default with respect to any order, writ, injunction, decree or demand of any court or other governmental authority, in the payment of any debt for borrowed money or under any agreement or other papers evidencing or securing any such debt.

19

Section 5.8    **Other Contracts.**  Mortgagor is not a party to any contract or agreement which materially and adversely affects its business, property, assets or financial condition.

Section 5.9    **Mortgagor Has All Necessary Rights.**  Mortgagor possesses all permits, licenses, patents, trademarks, trade names and copyrights required to conduct its business.  All easements, rights-of-way, utilities and other rights necessary to maintenance and operation of the Property have been obtained and are in full force and effect.

Section 5.10    **Regulation U.**  Except as disclosed to  Mortgagee in writing prior to the date of this Deed of Trust, none of the proceeds of the Note or the other Debt will be used for the purpose of purchasing or carrying, directly or indirectly, any margin stock or for any other purpose which would make such credit a "purpose credit" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System.

Section 5.11    **Legal Requirements.**  Mortgagor and the Property are in compliance with all applicable legal requirements and Mortgagor manages and operates (and will continue to manage and operate) the Property and its other businesses in accordance with good industry practices.

Section 5.12    **ERISA.**  No event has occurred which could result in Mortgagor's liability to the Pension Benefit Guaranty Corporation ("PBGC").  Mortgagor has met all requirements with respect to funding of each plan (a "Plan") maintained for any of Mortgagor's or the Note maker's employees subject to Title IV of the Employee Retirement Benefit Act of 1974, as amended, and related regulations ("ERISA"), if any exists.  No event or condition has occurred that would permit any lien under ERISA to attach to any of the Property.

Section 5.13    .

## ARTICLE 6
## DEFAULTS AND REMEDIES

Section 6.1    **Release for Full Payment and Performance.**    Subject to the automatic reinstatement provisions of Section 10.21 below, this Deed of Trust shall terminate and be of no further force or effect (and shall be released on Mortgagor's written request and at Mortgagor's cost and expense) upon full payment of the Debt,  complete performance of all of the obligations of the Obligors under the Credit Documents and final termination of Mortgagee's obligations--if any--to make any further advances under the Note or to provide any other financial accommodations to any Obligor.

Section 6.2    **Events of Default.**  The occurrence of any of the following events shall constitute an Event of Default (herein so called) under this Deed of Trust:

    (a)    any condemnation proceeding is commenced relating to all or, in the judgment of Mortgagee, any material part of, the Property.

    (b)    any substantial damage to or destruction of the Property occurs and insurance proceeds (together with other funds deposited with Mortgagee by or on behalf of Mortgagor for the purpose of repair and restoration of such damage or destruction) are not, in the opinion of

20

Mortgagee, sufficient to repair and restore the Property, or if insurance proceeds are not paid within a reasonable time.

(c)      the sale, encumbrance or abandonment (except as otherwise expressly agreed to in writing by Mortgagee) of any property now or hereafter covered by any instrument now or hereafter securing the Debt, the making of any levy, seizure or attachment of or on any such property or the loss, theft, substantial damage or destruction of any such property.

(d)      any Obligor shall have concealed, removed, or permitted to be concealed or removed, any part of its property, with intent to hinder, delay or defraud any of its creditors, or made or suffered a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or shall have made any transfer of its property to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or, while insolvent, shall have suffered or permitted any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within thirty (30) days from its date.

(e)      a default, an event of default or a similar event (however denominated) shall occur under any Credit Document, unless such default, event of default or similar event is fully cured within any applicable cure period contained in such Credit Document.

Section 6.3     **Remedies.**     Upon the occurrence of any Event of Default, and at any time thereafter:

(a)      **Debt Due.** All Debt (other than obligations now or hereafter owing to Mortgagee or any affiliate of Mortgagee under a Swap Agreement or under an agreement governing Banking Services) in its entirety shall, at the option of Mortgagee, become immediately due and payable without presentment, demand, notice of intention to accelerate or notice of acceleration, or other notice of any kind, all of which are hereby expressly WAIVED, and the liens and security interests created or intended to be created hereby shall be subject to foreclosure, repossession and sale in any manner provided for herein or provided for by law, as Mortgagee may elect, and Mortgagee may exercise any and all of its rights under this Deed of Trust, the Note and any of the other Credit Documents.

(b)      **Legal Proceedings.** Trustee and Mortgagee shall have the right and power to proceed by suit or suits in equity or at law, whether for the specific performance of any covenant or agreement of Mortgagor contained herein or in aid of the execution of the powers herein granted, or for foreclosure or the sale of the Property or any part thereof under the judgment or decree of any court of competent jurisdiction, or for the enforcement of any other appropriate legal or equitable remedy.

(c)      **Trustee's Sale.** It shall be the duty of the Trustee and of his successors and substitutes in the Trust, on Mortgagee's request (which request is hereby presumed) to enforce the Trust by selling the Mortgaged Property as is provided in this Deed of Trust.

Section 6.4     **Time and Place of Sale and Notices.** The sale shall be a public sale at auction held between 10 A.M. and 4 P.M. of the first Tuesday of a month (unless such first Tuesday falls on January 1 or July 4, in which event such sale shall take place on the first Wednesday of such

month). The sale shall take place at the county courthouse in the county in which the Real Property is located, or if it is located in more than one county, the sale will be made at the courthouse in one of those counties. The sale shall occur at the area at that courthouse which the commissioners' court of that county has designated as the place where such sales are to take place by designation recorded in the real property records of that county, or if no area is so designated, then the notice of sale shall designate the area at the courthouse where the sale covered by that notice is to take place, and the sale shall occur in that area. Notice of the sale shall include a statement of the earliest time at which the sale will occur and shall be given at least twenty-one (21) days before the date of the sale (1) by posting at the courthouse door of each county in which the Real Property is located a written notice designating the county in which the Real Property will be sold, (2) by filing in the Office of the County Clerk of each county in which the Real Property is located a copy of the notice posted under subsection (1) above and (3) by the holder of the Debt to which the power of sale is related serving written notice of the sale by certified mail on each debtor who, according to the records of a holder of the Debt, is obligated to pay that Debt. The sale shall begin at the time stated in the notice of sale or not later than three (3) hours after that time. If and to the extent that Texas Property Code Section 51.002 requires it, if any of the Real Property to be sold is used as a debtor's residence, a holder of the Debt shall serve that debtor with written notice by certified mail stating that debtor is in default under this Deed of Trust, and that debtor shall have at least twenty (20) days to cure the default before the entire Debt is due and notice of sale is given. Service of any notice under this Section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor entitled to it at that debtor's last known address as shown by the records of a holder of the Debt. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service. After such written notice shall have been posted and filed, as aforesaid, and such notice shall have been served upon such debtor or debtors, as aforesaid, the Trustee (or his successor or substitute then acting) shall perform his duty to enforce the Trust by selling the Mortgaged Property, either as an entirety or in parcels as the Trustee acting may elect, all rights to a marshalling of assets or sale in inverse order of alienation being waived, as aforesaid to the highest bidder or bidders for cash, and make due conveyance to the purchaser or purchasers, with general warranty, and the title to such purchaser or purchasers, when so made by the Trustee acting, Mortgagor binds itself, its successors and assigns, to warrant and forever defend against the claims and demands of every person whomsoever lawfully claiming or to claim the same or any part thereof (such warranty to supersede any provision contained in this Deed of Trust limiting the liability of Mortgagor). The provisions of this Deed of Trust with respect to posting and giving notices of sale are intended to comply with the provisions of Section 51.002 of the Texas Property Code as in force and effect on the date hereof, and in the event the requirement for any notice under such Section 51.002 shall be eliminated or the prescribed manner of giving it shall be modified by future amendment to, or adoption of any statute superseding, such Section 51.002, the requirement for such particular notice shall be deemed stricken from or modified in of this Deed of Trust in conformity with such amendment or superseding statute, effective as of its effective date. The manner prescribed in this Deed of Trust for serving or giving any notice, other than that to be posted or caused to be posted by the Trustee acting, shall not be deemed exclusive but such notice or notices may be given in any other manner permitted by applicable law. Said sale shall forever be a bar against Mortgagor, its heirs, legal representatives, successors and assigns, and all other persons claiming under it. It is expressly agreed that the recitals in each conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all lawful prerequisites to said sale shall be conclusively presumed to have been performed. Trustee may require minimum

bids at any foreclosure sale and may cancel and abandon the sale if no bid is received equal to or greater than any such minimum bid.

Section 6.5    **Application of Foreclosure Sale Proceeds.**   The proceeds of any sale of the Mortgaged Property, and any rents and other amounts collected by Mortgagee from Mortgagee's holding, leasing, operating or making any other use of the Mortgaged Property, shall be applied by Mortgagee (or by the receiver, if one is appointed) to the extent that funds are available therefrom in the following order of priority:

(a)    **To Expenses and Senior Obligation Payments.**   first, to the payment of the costs and expenses of taking possession of the Mortgaged Property and of holding, maintaining, using, leasing, repairing, equipping, manning, improving, marketing and selling it, including (i) trustees' and receivers' fees, (ii) court costs, (iii) attorneys' and accountants' fees, (iv) costs of advertisement and brokers' commissions and (v) payment of any and all Impositions, liens, security interests or other rights, titles or interests superior to the lien and security interest of this Deed of Trust, whether or not then due and including any prepayment penalties or fees and any accrued or required interest (except, in the case of foreclosure proceeds, those senior liens and security interests, if any, subject to which the Mortgaged Property was sold at such trustee's sale, and without in any way implying Mortgagee's consent to the creation or existence of any such prior liens);

(b)    **To Other Obligations Owed to Mortgagee.**   second, to the payment of all amounts (other than the principal balance and accrued but unpaid interest and obligations now or hereafter owing to Mortgagee (or an affiliate of Mortgagee) under a Swap Agreement or under an agreement governing Banking Services) comprising the Debt which may be due to Mortgagee, together with interest thereon;

(c)    **To Accrued Interest on the Debt.**   third, to the payment of all accrued but unpaid interest due on the Debt;

(d)    **To Debt Principal.**   fourth, to the payment of the principal balance on the Debt and all obligations owing to Mortgagee (or an affiliate of Mortgagee) under a Swap Agreement or under an agreement governing Banking Services, irrespective of whether then matured, and if it is payable in installments and not matured, then to the installments in such order as Mortgagee shall elect;

(e)    **To Junior Lienholders.**   fifth, to the extent funds are available therefor out of the sale proceeds or any rents and, to the extent known by Mortgagee, to the payment of any debt or obligation secured by a subordinate deed of trust on or security interest in the Mortgaged Property; and

(f)    **To Mortgagor.**   sixth, to Mortgagor, its successors and assigns, or to whomsoever may be lawfully entitled to receive such proceeds.

Section 6.6    **Mortgagee May Require Abandonment and Recommencement of Sale.**   If the Trustee or his substitute or successor should commence the sale, Mortgagee may at any time before the sale is completed direct the Trustee to abandon the sale, and may at any time or times thereafter direct the Trustee to again commence foreclosure; or, irrespective of whether foreclosure is

23

commenced by the Trustee, Mortgagee may at any time after an Event of Default institute suit for collection of the Debt or foreclosure of this Deed of Trust. If Mortgagee should institute suit for collection of the Debt or foreclosure of this Deed of Trust, Mortgagee may at any time before the entry of final judgment dismiss it and require the Trustee to sell the Mortgaged Property in accordance with the provisions of this Deed of Trust.

Section 6.7    **Multiple Sales; Deed of Trust Continues in Effect.**  No single sale or series of sales by the Trustee or by any substitute or successor and no judicial foreclosure shall extinguish the lien or exhaust the power of sale under this Deed of Trust except with respect to the items of property sold, nor shall it extinguish, terminate or impair Mortgagor's contractual obligations under this Deed of Trust, but such lien and power shall exist for so long as, and may be exercised in any manner by law or in this Deed of Trust provided as often as the circumstances require to give Mortgagee full relief under this Deed of Trust, and such contractual obligations shall continue in full force and effect until final termination of this Deed of Trust.

Section 6.8    **Mortgagee May Bid and Purchase.**  Mortgagee shall have the right to become the purchaser at any sale made under this Deed of Trust, being the highest bidder, and credit given upon all or any part of the Debt shall be the exact equivalent of cash paid for the purposes of this Deed of Trust.

Section 6.9    **Successor or Substitute Trustee.**  In case of absence, death, inability, refusal or failure of the Trustee in this Deed of Trust named to act, or in case he should resign (and he is hereby authorized to resign without notice to or consent of Mortgagor), or if Mortgagee shall desire, with or without cause, to replace the Trustee in this Deed of Trust named, or to replace any successor or substitute previously named, Mortgagee or any agent or attorney-in-fact for Mortgagee may name, constitute and appoint a successor and substitute trustee (or another one) without other formality than an appointment and designation in writing, which need not be acknowledged, filed or recorded to be effective, except only in those circumstances--if any--where acknowledgment, filing and/or recording is required by applicable law and such law also precludes Mortgagor from effectively waiving such requirement. Upon such appointment, this conveyance shall automatically vest in such substitute trustee, as Trustee, the estate in and title to all of the Mortgaged Property, and such substitute Trustee so appointed and designated shall thereupon hold, possess and exercise all the title, rights, powers and duties in this Deed of Trust conferred on the Trustee named and any previous successor or substitute Trustee, and his conveyance to the purchaser at any such sale shall be equally valid and effective as if made by the Trustee named in this Deed of Trust. Such right to appoint a substitute Trustee shall exist and may be exercised as often and whenever from any of said causes, or without cause, as aforesaid, Mortgagee or Mortgagee's agent or attorney-in-fact elects to exercise it.

Section 6.10   **Right to Receiver.**  Upon the occurrence of an Event of Default or at any time after commencement of a Trustee's foreclosure sale or any legal proceedings under this Deed of Trust, Mortgagee may, at Mortgagee's election and by or through the Trustee or otherwise, make application to a court of competent jurisdiction for appointment of a receiver of the Property, as a matter of strict right, without notice to Mortgagor and without regard to the adequacy of the value of the Property for the repayment of the Debt, and Mortgagor hereby irrevocably consents to such an appointment. Any receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to possess, rent, maintain, repair and operate the Property upon such terms

24

and conditions as may be approved by the court, and shall apply the rents realized in the same manner and order as foreclosure proceeds in accordance with Section 6.5.

Section 6.11   **Tenants at Will.**  Mortgagor agrees for itself and its heirs, legal representatives, successors and assigns, that if any of them shall hold possession of the Property or any part thereof subsequent to foreclosure hereunder, Mortgagor, or the parties so holding possession, shall become and be considered as tenants at will of the purchaser or purchasers at such foreclosure sale; and any such tenant failing or refusing to surrender possession upon demand shall be guilty of forcible detainer and shall be liable to such purchaser or purchasers for rental on said premises, and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, all damages which may be sustained by any such tenant as a result thereof being hereby expressly waived.

Section 6.12   **Lifting of Automatic Stay.**  In the event that Mortgagor or any other Obligor is the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding, federal or state, voluntary or involuntary, under any present or future law or act, Mortgagee is entitled to the automatic and absolute lifting of any automatic stay as to the enforcement of its remedies under the Credit Documents against the security for the Debt, including specifically the stay imposed by Section 362 of the United States Federal Bankruptcy Code, as amended.  Mortgagor hereby consents to the immediate lifting of any such automatic stay, and will not contest any motion by Mortgagee to lift such stay.  Mortgagor expressly acknowledges that the security for the Debt is not now and will never be necessary to any plan of reorganization of any type.

# ARTICLE 7
## MORTGAGEE'S RIGHT TO PERFORM MORTGAGOR'S OBLIGATIONS

Section 7.1   **Mortgagee May Elect to Perform Defaulted Obligations.**  If Mortgagor should fail to comply with any of its agreements, covenants or obligations under this Deed of Trust, the Note, or any other Credit Document, then Mortgagee (in Mortgagor's name or in Mortgagee's own name) may perform them or cause them to be performed for Mortgagor's account and at Mortgagor's expense, but shall have no obligation to perform any of them or cause them to be performed.   Any and all expenses thus incurred or paid by Mortgagee shall be Mortgagor's obligations to Mortgagee due and payable on demand, or if no demand is sooner made, then they shall be due on or before four (4) years after the respective dates on which they were incurred, and each shall bear interest from the date Mortgagee pays it until the date Mortgagor repays it to Mortgagee, at the maximum nonusurious rate of interest from time to time permitted by whichever of applicable Texas or federal law from time to time permits the higher nonusurious interest rate (the "Ceiling Rate"), or, only if applicable law imposes no maximum nonusurious rate, then at the same rate as is provided for in the Note for interest on past due principal (the "Past Due Rate").  At all times, if any, as the Texas Finance Code shall establish the Ceiling Rate for any purpose under this Deed of Trust, the Ceiling Rate shall be the "weekly ceiling" as defined in the Texas Finance Code from time to time in effect.  Upon making any such payment or incurring any such expense, Mortgagee shall be fully and automatically subrogated to all of the rights of the person, corporation or body politic receiving such payment.  Any amounts owing by Mortgagor to Mortgagee pursuant to this or any other provision of this Deed of Trust shall automatically and without notice to and become a part of the Debt and shall be secured by this and all other instruments securing the Debt. The amount and nature of any such expense and the time when it was paid shall be fully established

by the affidavit of Mortgagee or any of Mortgagee's officers or agents or by the affidavit of any original, substitute or successor Trustee acting under this Deed of Trust.  Without notice to Mortgagor or any other person or entity, the Ceiling Rate and the Past Due Rate shall automatically fluctuate upward and downward as and in any amount by which the maximum nonusurious rate of interest permitted by such applicable law and the rate of interest as provided for in the Note for interest on past due principal fluctuate, respectively.

Section 7.2    **Exercise of Rights is not Waiver or Cure of Default.**  The exercise of the privileges granted to Mortgagee in this Article shall in no event be considered or constitute a cure of the default or a waiver of Mortgagee's right at any time after an Event of Default to declare the Debt to be at once due and payable, but is cumulative of such right and of all other rights given by this Deed of Trust, the Note and the Credit Documents and of all rights given Mortgagee by law.

## ARTICLE 8
### TAX AND INSURANCE DEPOSITS

In addition to the Debt payments, from and after an Event of Default, Mortgagor agrees to deposit with Mortgagee each month an amount equal to one-twelfth (1/12) of the aggregate of (i) the next succeeding premiums (or payments in respect of them, if premiums are financed) on all insurance policies which Mortgagor is required by or pursuant to this Deed of Trust to maintain on the Property, and (ii) the amount of the next succeeding annual tax payments, assessment installments, maintenance charges and other Impositions to become due and payable with respect to the Property, as estimated by Mortgagee, plus, with the first of such monthly deposits, an additional month's share (a twelfth) of such premiums and taxes for each month less than twelve remaining before the next payment thereof falls due.  At least fifteen (15) days before the date on which any such insurance premium (or payment in respect of it, if premiums are financed) or any of the Impositions must be paid to avoid delinquency, promptly after Mortgagee's request, Mortgagor agrees to deliver to Mortgagee a statement or statements showing the amount of the premium (or payment in respect of it, if premiums are financed) or Impositions required to be paid and the name and mailing address of the concern or authority to which it is payable and, at the same time, Mortgagor agrees to deposit with Mortgagee such amounts as will, when added to the amount of such deposits previously made and then remaining available for the purpose, be sufficient to pay such insurance obligations or Impositions.  Mortgagee shall have the right to and will, if, as and when requested by Mortgagor to do so, apply such deposits in payment of such insurance obligations and Impositions.

## ARTICLE 9
### COLLATERAL ASSIGNMENT OF RENTS

Section 9.1    **Collateral Assignment of Rents, Revenues, Income and Profits.**  Mortgagor hereby collaterally assigns to Mortgagee all rents, revenues, income and profits and all other "Rents" (as such term is defined in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code) ("Rental") payable under each Lease (hereinafter defined) now or at any time hereinafter existing, such collateral assignment being upon the terms set forth in Section 9.2 below. The term "Lease" or "Leases" means any oral or written agreement between Mortgagor and another person or entity to use or occupy all or any portion of the Property, together with any guaranties or security for the obligations of any tenant, lessee, sublessee or other person or entity having the right

to occupy, use or manage any part of the Property under a Lease. Each time Mortgagor enters into a Lease, such Lease shall automatically become subject to this Article without further action.

Section 9.2    **Right to Direct Payment of Rental After an Event of Default.**  The collateral assignment of Rental to Mortgagee shall be upon the following terms: (a) upon receipt from Mortgagee of notice that an Event of Default exists, each tenant is hereby authorized and directed to pay directly to Mortgagee all Rental thereafter accruing or payable and receipt of Rental by Mortgagee shall be a release of such tenant to the extent of all amounts so paid; (b) Rental so received by Mortgagee shall be applied by Mortgagee, first to the expenses, if any, of collection and then in accordance with <u>Section 6.5</u> hereof; (c) without impairing its rights hereunder, Mortgagee may, at its option, at any time and from time to time, release to Mortgagor Rental so received by Mortgagee, or any part thereof; (d) Mortgagee shall not be liable for its failure to collect or its failure to exercise diligence in the collection of Rental, but shall be accountable only for Rental that it shall actually receive; and (e) the collateral assignment contained in this Article shall terminate upon the release of this Deed of Trust, but no tenant shall be required to take notice of termination until a copy of such release shall have been delivered to such tenant.

Section 9.3    **Remedies.**  Should an Event of Default occur, Mortgagor agrees to deliver to Mortgagee possession and control of all Rental held by Mortgagor in trust for the benefit of Mortgagee.  Mortgagor specifically agrees that Mortgagee may upon the occurrence of any Event of Default or at any time thereafter, personally or through an agent selected by Mortgagee, take--or have the Trustee take--possession and control of all or any part of the Property and may receive and collect all Rental theretofore accrued and all thereafter accruing therefrom until the final termination of this Deed of Trust or until the foreclosure of the lien of this Deed of Trust, applying so much thereof as may be collected before sale of the Property by the Trustee or judicial foreclosure of this Deed of Trust first to the expenses of Mortgagee incurred in obtaining the Rental and then applying the Rental so received in accordance with the provisions of <u>Section 6.5</u> hereof.  Any such action by Mortgagee shall not operate as a waiver of the Event of Default in question, or as an affirmance of any Lease or of the rights of any tenant in the event title to that part of the Property covered by the Lease or held by the tenant should be acquired by Mortgagee or other purchaser at foreclosure sale. Mortgagee, Mortgagee's agent or the Trustee may use against Mortgagor or any other person such lawful or peaceable means as the person acting may see fit to enforce the collection of any such Rental or to secure possession of the Property, or any part of it and may settle or compromise on any terms as Mortgagee, Mortgagee's agent or the Trustee sees fit, the liability of any person or persons for any such Rental.  In particular, Mortgagee, Mortgagee's agent or the Trustee may institute and prosecute to final conclusion actions of forcible entry and detainer, or actions of trespass to try title, or actions for damages, or any other appropriate actions, in the name of Mortgagee, Mortgagor, or the Trustee, and may settle, compromise or abandon any such actions as Mortgagee, Mortgagee's agent or the Trustee may see fit; and Mortgagor binds itself and its successors and assigns to take whatever lawful or peaceable steps Mortgagee, Mortgagee's agent or the Trustee may ask of it or any such person or concern so claiming to take for such purposes, including the institution and prosecution of actions of the character above stated.  However, neither Mortgagee, Mortgagee's agent nor the Trustee shall be obligated to collect any such Rental or be liable or chargeable for failure to do so.  Upon any sale of the Property or any part thereof in foreclosure of the lien or security interest created by this Deed of Trust, such Rental so sold which thereafter accrues shall be deemed included in such sale and shall pass to the purchaser free and clear of the assignment made in this Article.

27

Section 9.4    **Mortgagee in Possession; No Liability of Mortgagee.** Mortgagee's acceptance of this collateral assignment shall not, before entry upon and taking possession of the Property by Mortgagee, be deemed to constitute Mortgagee a "mortgagee in possession," nor obligate Mortgagee to appear in or defend any proceeding relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses or perform any obligation or liability under the Leases, or assume any obligation under the Leases including the obligation to return any deposit delivered to Mortgagor by any tenant. Mortgagee shall not be liable for any injury or damage to person or property in or about the Property. Neither the collection of Rental due under the Leases herein described nor possession of the Property by Mortgagee shall render Mortgagee liable with respect to any obligations of Mortgagor under any of the Leases.

Section 9.5    **Additional Covenants, Warranties and Representations Concerning Leases and Rental**. Mortgagor covenants, warrants and represents that:

(a)    Neither Mortgagor nor any previous owner has entered into any prior oral or written assignment, pledge or reservation of the Rental, entered into any prior assignment or pledge of Mortgagor's landlord interests in any Lease or performed any act or executed any other instruments which might prevent or limit Mortgagee from operating under the terms and conditions of this Article;

(b)    Mortgagor has good title to the Leases and Rental hereby assigned and the authority to assign same, and no other person or entity has any right, title or interest in and to the landlord's interests therein;

(c)    All existing Leases are valid, unmodified and in full force and effect, except as indicated herein, and no default exists thereunder;

(d)    No Rental has been, nor does Mortgagor anticipate that any Rental will be, waived, released, discounted, set off or compromised, except as disclosed to Mortgagee in writing before the date hereof;

(e)    Except as disclosed to Mortgagee in writing before the date hereof, Mortgagor has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued Rental;

(f)    Mortgagor shall (i) perform all of the terms and conditions of the Leases, (ii) upon Mortgagee's request, execute an additional collateral assignment to Mortgagee of all Leases then affecting the Property and all Rental and other sums due thereunder by collateral assignment(s) in form and substance satisfactory to Mortgagee and (iii) at the request of Mortgagee, record such Leases and the collateral assignment(s) thereof to Mortgagee. Mortgagor will not, without the prior written consent of Mortgagee, amend, modify, extend, renew, terminate, cancel or surrender any Lease or suffer or permit any of the foregoing, orally or in writing;

(g)    Mortgagor shall not execute any Lease unless the form of the Lease has been approved by Mortgagee and the tenant under such Lease and the terms of such Lease shall comply with leasing standards for the Property from time to time approved by Mortgagee in writing;

America:0028429/00013:70413922v2

(h)    Mortgagor shall give immediate notice to Mortgagee of any notice Mortgagor received from any tenant or subtenant under any Leases specifying any claimed default by any party under such Leases;

(i)    Mortgagor shall enforce the tenants' obligations under the Leases;

(j)    Mortgagor shall defend, at Mortgagor's expense, any proceeding pertaining to the Leases, including, if Mortgagee so requests, any such proceeding to which Mortgagee is a party;

(k)    Mortgagor shall neither create nor permit any encumbrance upon its interest as landlord under the Leases, except for this Deed of Trust and any other encumbrances permitted by this Deed of Trust;

(l)    Mortgagor shall not encumber or assign, or permit the encumbrance or assignment of, any Leases or Rental without the prior written consent of Mortgagee;

(m)    Mortgagor shall not waive or release any obligation of any tenant under the Leases without Mortgagee's prior written consent;

(n)    Each Lease executed after the date hereof shall contain a statement signed by the Mortgagor that such Lease is subject to this Deed of Trust;

(o)    Mortgagor shall from time to time furnish to Mortgagee, within thirty (30) days after demand therefor, true, correct and complete copies of all Leases or any portion of the Leases specified by Mortgagee; and

(p)    Mortgagor shall not in any event collect any Rental more than one (1) month in advance of the time it will be earned (and if Mortgagor does so, in addition to any other rights or remedies available by reason of such Event of Default, all Rental so collected more than one (1) month in advance of the time it is earned shall be delivered to Mortgagee to be applied to the Debt).

Section 9.6    **Merger**.  There shall be no merger of the leasehold estates created by the Leases with the fee or any other estate in the Property without the prior written consent of Mortgagee.

Section 9.7    **Reassignment**.  By Mortgagee's acceptance of this Deed of Trust, it is understood and agreed that a full and complete release of this Deed of Trust shall operate as a full and complete reassignment to Mortgagor of the Mortgagee's rights and interests under this Article (subject to the automatic reinstatement provisions of <u>Section 10.21</u> below).

Section 9.8    **Subordination of Deed of Trust to Leases**.  It is agreed and understood that Mortgagee hereby reserves the right and shall have the right, at any time and from time to time, without the consent or joinder of any other party, to subordinate this Deed of Trust and the liens, assignments and security interests created by this Deed of Trust to all or any of the Leases regardless of the respective priority of any of such Leases and this Deed of Trust.  Upon doing so and filing evidence of such subordination in the real property records in the county or counties where the Real Property is located, a foreclosure of Mortgagee's liens, assignments and security

29

interests under this Deed of Trust shall be subject to and shall not operate to extinguish any of said Leases as to which such subordination is operative.

Section 9.9    **Texas Assignment of Rents Act.**  Without in any way limiting or restricting any of Mortgagee's other rights, benefits or privileges hereunder, Mortgagor and Mortgagee hereby expressly agree that Mortgagee shall be entitled to all rights, benefits or privileges provided for in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code.

# ARTICLE 10
## GENERAL AND MISCELLANEOUS PROVISIONS

Section 10.1    **Debt May be Changed without Affecting this Deed of Trust.**  Any of the Debt may be extended, rearranged, renewed, increased or otherwise changed in any way, and any part of the security described in this Deed of Trust or any other security for any part of the Debt may be waived or released without in anyway altering or diminishing the force, effect or lien of this Deed of Trust, and the lien, assignment and security interest granted by this Deed of Trust shall continue as a prior lien, assignment and security interest on all of the Property not expressly so released, until the final termination of this Deed of Trust.

Section 10.2    **Security is Cumulative.**  No other security now existing or hereafter taken to secure any part of the Debt or the performance of any obligation or liability whatever shall in any manner affect or impair the security given by this Deed of Trust.  All security for any part of the Debt and the performance of any obligation or liability shall be taken, considered and held as cumulative.

Section 10.3    **Usury Not Intended; Savings Provisions**.  The provisions of Section 8.12 of the Credit Agreement are incorporated by reference as though fully set forth herein.

Section 10.4    **Mortgagor Waives All Stay, Extension, Appraisement and Redemption Rights.**  Mortgagor will not at any time insist upon or plead or in any manner whatever claim or take the benefit or advantage of any stay or extension law now or at any time hereafter in force in any locality where the Property or any part thereof may or shall be situated, nor will Mortgagor claim, take or insist on any benefit or advantage from any law now or hereafter in force providing for the valuation or appraisement of the Property or any part thereof before any sale or sales thereof to be made pursuant to any provision of this Deed of Trust, or to decree of any court of competent jurisdiction, nor after any such sale or sales made pursuant to any provision of this Deed of Trust, or to decree of any court of competent jurisdiction, nor after any such sale or sales will Mortgagor claim or exercise any right conferred by any law now or at any time hereafter in force to redeem the property so sold or any part of it, and Mortgagor hereby WAIVES all benefit and advantage of any such law or laws and WAIVES the appraisement of the Property or any part of it and covenants that Mortgagor will not hinder, delay or impede the execution of any power in this Deed of Trust granted and delegated to the Trustee or Mortgagee, but that Mortgagor will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

Section 10.5    **Subrogation to Liens Discharged.**  Mortgagor hereby agrees that Mortgagee shall be subrogated to all rights, titles, interests, liens, benefits, remedies, equities, superior title and security interests (the "Subrogated Liens") owned, claimed or held as security for any debt or other obligation (the "Discharged Obligations") directly or indirectly satisfied, discharged or paid with money or other property advanced by Mortgagee.    Irrespective of any formal or informal

30

acknowledgment of partial or complete satisfaction or release of the Discharged Obligations, the Subrogated Liens shall be continued, renewed, extended, brought forward and rearranged as security for the Debt in addition to and cumulative of the lien and security interest of this Deed of Trust. Foreclosure under this Deed of Trust shall constitute foreclosure of the Subrogated Liens.

Section 10.6   **Intentionally Deleted.**

Section 10.7   **Due on Sale.**  Mortgagor agrees that if, without Mortgagee's prior written consent, (a) any part of the Property or any interest either in the Property or in the beneficial equity ownership of any Mortgagor which is not a natural person (an "Equity Interest") should be directly or indirectly transferred, conveyed or mortgaged, voluntarily or involuntarily, absolutely or as security, or (b) Mortgagor should enter into any contractual arrangement to transfer, convey or mortgage any part of the Property or any interest either in the Property or in an Equity Interest, Mortgagee shall have the right and option (except only in those circumstances, if any, where the exercise of such right is expressly prohibited by applicable law and such law also precludes Mortgagor from effectively waiving such prohibition) to declare the Note or the entire amount of the Debt to be due and payable.   Mortgagee shall have such right and option absolutely and irrespective of whether or not the transfer, conveyance or mortgage would or might (i) diminish the value of any security for the Debt, (ii) increase the risk of default under this Deed of Trust, (iii) increase the likelihood of Mortgagee's having to resort to any security for the Debt after default or (iv) add or remove the liability of any person or entity for payment of the Debt or performance of any covenant or obligation under this Deed of Trust.   To exercise such right and option, Mortgagee shall give written notice to Mortgagor and to the person or entity to whom such property was transferred, conveyed or mortgaged that the Note or Debt has been declared due and payable and that Mortgagee demands that its maker pay it.   If Mortgagee's consent to a proposed transfer, conveyance or mortgaging is requested, Mortgagee shall have the right (in addition to its absolute right to refuse to consent to any such transaction) to condition its consent upon satisfaction of any one or more of the following requirements: (1) that the interest rate(s) on all or any part of the Debt be increased to a rate which is then acceptable to Mortgagee; (2) that a reasonable transfer fee, in an amount determined by Mortgagee, be paid; (3) that a principal amount deemed appropriate by Mortgagee be paid against the Debt to reduce the ratio that the outstanding balance of the Debt bears to the value of the Property as determined by Mortgagee to a level which is then acceptable to Mortgagee; (4) that Mortgagor and each proposed transferee execute an assumption agreement and such other instruments as Mortgagee or its counsel shall reasonably require and in form and substance satisfactory to Mortgagee and its counsel;   (5) that the proposed transferee's creditworthiness and experience in owning and operating similar properties be demonstrable and proven to Mortgagee's reasonable satisfaction to be at least as good as Mortgagor's and Mortgagor's managers' at the time the Note was first funded; (6) that the liability to Mortgagee of Mortgagor and all makers and guarantors of all or any part of the Debt will be confirmed by them in writing to be unaffected and unimpaired by such transfer, conveyance or mortgaging and (7) that any existing or proposed junior mortgagee expressly subordinate to all liens and security interests securing the Debt as to both lien and payment right priority and consent to the proposed transaction in a writing addressed to Mortgagee.

Section 10.8   **Condemnation.**  If before final termination of this Deed of Trust, all or a portion of the Property is taken for public or quasi-public purposes, either through eminent domain or condemnation proceedings, by voluntary conveyance under threat of condemnation with

Mortgagee's express written consent and joinder or otherwise, Mortgagor hereby agrees that any and all sums of money awarded or allowed as damages, payments in lieu of condemnation awards or otherwise to or for the account of the owner of the Property or any portion of it on account of such taking shall be paid and delivered to Mortgagee, and they are hereby assigned to Mortgagee, and shall be paid directly to Mortgagee. All proceeds of condemnation awards or proceeds of sale in lieu of condemnation with respect to the Property and all judgments, decrees and awards for injury or damage to the Property shall be applied, first, to reimburse Mortgagee or the Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with collection of such proceeds and, second, the remainder of said proceeds shall be applied, at the discretion of Mortgagee, to the payment of the Debt in the order determined by Mortgagee in its sole discretion, or paid out to repair or restore the Property so affected by such condemnation, injury or damage in the same manner as provided in Section 4.1(h) above. Mortgagor agrees to execute such further assignments of all such proceeds, judgments, decrees and awards as Mortgagee may request. Mortgagee is hereby authorized, in the name of Mortgagor, to execute and deliver valid acquittances for, and to appeal from, any such judgment, decree or award. Mortgagee shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such proceeds, judgments, decrees or awards.

Section 10.9  **Appraisals and Reports to be Provided.** Mortgagee (by its officers, employees, directors or agents) at any time and from time to time, and at Mortgagor's sole cost and expense (to the extent not prohibited by applicable law), may contract for the services of an appraiser approved by Mortgagee in its sole discretion to perform a written appraisal of the Property (or such parts of it as are designated in Mortgagee's request). Any such appraisal may be performed at any time or times upon reasonable notice to Mortgagor, as long as it does not unreasonably interfere with Mortgagor's use of the Property. Specifically, any such appraiser is authorized to enter upon, and Mortgagor shall allow such appraiser access to, the Property as may be necessary in the opinion of such appraiser to perform its professional services. Mortgagor will also furnish such appraiser such historical and operational information regarding the Property as may be reasonably requested by such appraiser to facilitate preparation of an appraisal and will make available for meetings with such appraiser appropriate personnel having knowledge of such matters. Mortgagor will permit Mortgagee and its agents, independent contractors, representatives, employees and officers at all reasonable times to go upon, examine, inspect and remain on the Property for any lawful purpose and will furnish to Mortgagee on request all pertinent information in regard to the development, operation, use and status of the Property. Promptly upon Mortgagee's request, Mortgagor agrees, at Mortgagor's sole cost and expense (to the extent not prohibited by applicable law):

(a)    to cause an inspection and written appraisal of the Property (or such parts of it as are designated in Mortgagee's request) to be made by a qualified appraiser approved by Mortgagee; and

(b)    to cause to be conducted or prepared any other written report, summary, opinion, inspection, review, survey, audit or other professional service relating to the Property or any operations in connection with it (all as designated in Mortgagee's request), including any accounting, architectural, consulting, engineering, design, legal, management, pest control, surveying, toxic or hazardous materials survey, inspection, removal or cleanup work, title abstracting or other technical, managerial or professional service relating to the Property or its operations.

Mortgagee may elect to deliver any such request orally, by telegram, telex or telefax, by mail or by hand delivery addressed to Mortgagor as provided in the Introduction to this Deed of Trust or by any other legally effective method, and it may be given at any time and from time to time before the complete and final release and discharge of this Deed of Trust.  Any amount to be paid under this Section by Mortgagor to Mortgagee shall be a demand obligation owing by Mortgagor to Mortgagee and shall bear interest from the date of expenditure at the Past Due Rate.

Section 10.10  **Notices.**  Except where certified or registered mail notice is required by applicable law, service of any notice to Mortgagor required or permitted under this Deed of Trust shall be completed upon deposit of the notice, enclosed in a first class postage prepaid wrapper, properly addressed to Mortgagor at Mortgagor's address designated in the Introduction to this Deed of Trust (or if no address is so designated, or such address has changed, to Mortgagor's most recent address as shown by the records of Mortgagee) in a post office or official depository under the care and custody of the United States Postal Service, and the affidavit of any person having knowledge of the facts concerning such mailing shall be conclusive evidence of the fact of such service.  Such method of giving notice shall not be exclusive, but instead any notice may be given to Mortgagor in any manner permitted or recognized by law.

Section 10.11  **Mortgagee and Mortgagor.**  The term "Mortgagee" as used in this Deed of Trust shall mean and include the holder or holders of the Debt from time to time, and upon acquisition of the Debt by any holder or holders other than the named Mortgagee, effective as of the time of such acquisition, the term "Mortgagee" shall mean all of the then holders of the Debt, to the exclusion of all prior holders not then retaining or reserving an interest in the Debt from time to time, whether such holder acquires the Debt through succession to or assignment from a prior Mortgagee.  The term "Mortgagor, its successors and assigns" shall also include the heirs and legal representatives of each Mortgagor who is a natural person and the receivers, conservators, custodians and trustees of each Mortgagor, provided that no Mortgagor may assign or delegate any of its or his rights, interests or obligations under this Deed of Trust, the Note or any Credit Document without Mortgagee's express prior written consent, and any attempted assignment or delegation without it shall be void or voidable at Mortgagee's election.

Section 10.12  **Article, Section and Exhibit References, Numbers and Headings.**  References in this Deed of Trust to Articles, Sections and Exhibits refer to Articles, Sections and Exhibits in and to this Deed of Trust unless otherwise specified.   The Article and Section numbers, Exhibit designations and headings used in this Deed of Trust are included for convenience of reference only and shall not be considered in interpreting, applying or enforcing this Deed of Trust.

Section 10.13  **Exhibits Incorporated.**  All exhibits, annexes, appendices and schedules referred to any place in the text of this Deed of Trust are hereby incorporated into it at that place in the text, to the same effect as if set out there verbatim.

Section 10.14  **"Including" is not Limiting.**  Wherever the term "including" or a similar term is used in this Deed of Trust, it shall be read as if it were written, "including by way of example only and without in any way limiting the generality of the clause or concept referred to."

Section 10.15  **Gender.**  The masculine and neuter pronouns used in this Deed of Trust each includes the masculine, feminine and neuter genders.

33

Section 10.16 **Severability.** If any provision of this Deed of Trust is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and this Deed of Trust shall be liberally construed so as to carry out the intent of the parties to it. Each waiver in this Deed of Trust is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Mortgagee for having bargained for and obtained it.

Section 10.17 **Any Unsecured Debt is Deemed Paid First.** If any part of the Debt cannot lawfully be secured by this Deed of Trust, or if the lien, assignments and security interest of this Deed of Trust cannot be lawfully enforced to pay any part of the Debt, then and in either such event, at the option of Mortgagee, all payments on the Debt shall be deemed to have been first applied against that part of the Debt.

Section 10.18 **Noun, Pronoun and Verb Numbers.** When this Deed of Trust is executed by more than one person, corporation, partnership, joint venture, trust or other legal entity, it shall be construed as though "Mortgagor" were written "Mortgagors" and as though the pronouns and verbs in their number were changed to correspond, and in such case, (a) each of Mortgagors shall be bound jointly and severally with one another to keep, observe and perform the covenants, agreements, obligations and liabilities imposed by this Deed of Trust upon the "Mortgagor", (b) a release of one or more persons, corporations or other legal entities comprising "Mortgagor" shall not in any way be deemed a release of any other person, corporation or other legal entity comprising "Mortgagor" and (c) a separate action hereunder may be brought and prosecuted against one or more of the persons, corporations or other legal entities comprising "Mortgagor" without limiting any liability of or impairing Mortgagee's right to proceed against any other person, corporation or other legal entity comprising "Mortgagor".

Section 10.19 **Homestead Disclaimer.** Mortgagor warrants and represents that at the time of execution and delivery of this Deed of Trust, no part of the Mortgaged Property forms any part of any property owned, used or claimed by Mortgagor or Mortgagor's spouse or children either as a residence or a business homestead, or as otherwise exempt from forced sale under the laws of the State of Texas or the United States.

Section 10.20 **Household Goods Not Covered.** If Mortgagee is a state or national bank and if any natural person executing this Deed of Trust is a "consumer" as defined in Regulation AA of the Board of Governors of the Federal Reserve System, no lien or security interest created or evidenced by this Deed of Trust shall extend to, cover or affect "household goods" as also defined therein and no waiver of the rights of Mortgagor contained in this or any other instrument shall extend to, or be effective as to, any right the waiver of which is prohibited by Regulation AA. If Mortgagee is not a state or national bank and if any natural person executing this Deed of Trust is a "consumer" as defined in 16 C.F.R. § 444.1(d), as amended, no lien or security interest created or evidenced by this Deed of Trust shall extend to, cover or affect "household goods" as defined in 16 C.F.R. § 444.1(a), as amended and no waiver of the rights of Mortgagor contained in this or any other instrument shall extend to, or be effective as to, any right the waiver of which is prohibited by 16 C.F.R § 444.

Section 10.21 **Payments Returned.** Mortgagor agrees that, if at any time all or any part of any payment previously applied by Mortgagee to the Debt is or must be returned by Mortgagee--or recovered from Mortgagee--for any reason (including the order of any bankruptcy court), this Deed

34

of Trust shall automatically be reinstated to the same effect as if the prior application had not been made, and, in addition, Mortgagor hereby agrees to indemnify Mortgagee against, and to save and hold Mortgagee harmless from any required return by Mortgagee--or recovery from Mortgagee--of any such payment because of its being deemed preferential under applicable bankruptcy, receivership or insolvency laws, or for any other reason.

Section 10.22  **Amendments in Writing.**  This Deed of Trust shall not be changed orally but shall be changed only by agreement in writing signed by Mortgagor and Mortgagee.  Any waiver or consent with respect to this Deed of Trust shall be effective only in the specific instance and for the specific purpose for which given.  No course of dealing between the parties, no usage of trade and no parole or extrinsic evidence of any nature shall be used to supplement or modify any of the terms or provisions of this Deed of Trust.

Section 10.23  **Mortgagee's Offset Rights.**  Mortgagee is hereby authorized at any time and from time to time, without notice to any person or entity (and Mortgagor hereby WAIVES any such notice) to the fullest extent permitted by law, to set-off and apply any and all monies, securities and other properties of Mortgagor now or in the future in the possession, custody or control of Mortgagee, or on deposit with or otherwise owed to Mortgagor by Mortgagee--including all such monies, securities and other properties held in general, special, time, demand, provisional or final accounts or for safekeeping or as collateral or otherwise (but excluding those accounts clearly designated as escrow or trust accounts held by Mortgagor for others unaffiliated with Mortgagor)-- against any and all of Mortgagor's obligations to Mortgagee now or hereafter existing under this Deed of Trust, irrespective of whether Mortgagee shall have made any demand under this Deed of Trust.  Mortgagee agrees to use reasonable efforts to promptly notify Mortgagor after any such set-off and application, underlined _provided_ that failure to give--or delay in giving--any such notice shall not affect the validity of such set-off and application or impose any liability on Mortgagee.  Mortgagee's rights under this Section are in addition to other rights and remedies (including other rights of set-off) which Mortgagee may have.

Section 10.24  **Venue.**  This Deed of Trust is performable in Harris County, Texas, which shall be a proper place of venue for suit on or in respect of this Deed of Trust.  Mortgagor irrevocably agrees that any legal proceeding in respect of this Deed of Trust shall be brought in the district courts of Harris County, Texas or the United States District Court for the Southern District of Texas, Houston Division (collectively, the "Specified Courts").  Mortgagor hereby irrevocably submits to the nonexclusive jurisdiction of the state and federal courts of the State of Texas.  Mortgagor hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to any Credit Document brought in any Specified Court, and hereby further irrevocably waives any claims that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  Mortgagor further irrevocably consents to the service of process out of any of the Specified Courts in any such suit, action or proceeding by the mailing of copies thereof by certified mail, return receipt requested, postage prepaid, to Mortgagor at its address as provided in this Deed of Trust or as otherwise provided by Texas law.  Nothing herein shall affect the right of Mortgagee to commence legal proceedings or otherwise proceed against Mortgagor in any jurisdiction or to serve process in any manner permitted by applicable law.  Mortgagor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  **THIS DEED OF**

TRUST SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS EXCEPT TO THE EXTENT THAT THE LAWS OF THE UNITED STATES OF AMERICA AND ANY RULES, REGULATIONS, OR ORDERS ISSUED OR PROMULGATED THEREUNDER, APPLICABLE TO THE AFFAIRS AND TRANSACTIONS ENTERED INTO BY MORTGAGEE, OTHERWISE PRE-EMPT TEXAS LAW, IN WHICH EVENT SUCH FEDERAL LAW SHALL CONTROL.

Section 10.25 **Entire Agreement.** This Deed of Trust embodies the entire agreement and understanding between Mortgagor and Mortgagee with respect to its subject matter and supersedes all prior conflicting or inconsistent agreements, consents and understandings relating to such subject matter. Mortgagor acknowledges and agrees that there is no oral agreement between Mortgagor and Mortgagee which has not been incorporated in this Deed of Trust.

Section 10.26 **Intentionally Deleted.**

Section 10.27 **Release of Claims.** Mortgagor hereby releases, discharges and acquits forever Mortgagee and Trustee and their officers, directors, trustees, agents, employees and counsel (in each case, past, present or future) from any and all Claims existing as of the date hereof (or the date of actual execution hereof by Mortgagor, if later). As used herein, the term "Claim" shall mean any and all liabilities, claims, defenses, demands, actions, causes of action, judgments, deficiencies, interest, liens, costs or expenses (including court costs, penalties, attorneys' fees and disbursements, and amounts paid in settlement) of any kind and character whatsoever, including claims for usury, breach of contract, breach of commitment, negligent misrepresentation or failure to act in good faith, in each case whether now known or unknown, suspected or unsuspected, asserted or unasserted or primary or contingent, and whether arising out of written documents, unwritten undertakings, course of conduct, tort, violations of laws or regulations or otherwise. To the maximum extent permitted by applicable law, Mortgagor hereby waives all rights, remedies, claims and defenses based upon or related to Sections 51.003, 51.004 and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Deed of Trust.

## ARTICLE 11
### SPECIAL PROVISIONS

Section 11.1 **Intentionally Deleted.**

Section 11.2 **Intentionally Deleted.**

Section 11.3 **Intentionally Deleted.**

Section 11.4 **Revolving Credit Endorsement.** The Debt is, in part, a revolving type of indebtedness as described in Procedural Rule P-9(b)(8)(a) of the Basic Manual of Rules Rates and Forms for the Writing of Title Insurance in the State of Texas, as promulgated by the State Board of Insurance of the State of Texas. Advances against the Note are subject to the terms and provisions of the Note and the other Credit Documents.

Section 11.5 **Intentionally Deleted.**

36

EXECUTED to be effective as of the date first set forth above.

<div style="margin-left: 40%;">

**3000 SMITH, LTD.,**
a Texas limited partnership

By:    3000 Smith GP, Inc.,
        a Texas corporation,
        its general partner

By:_____
Name: Charles L. Fridge III
Title: _CEO_____

</div>

THE STATE OF TEXAS         §
                              §

COUNTY OF HARRIS         §

     This instrument was acknowledged before me on this 14th day of December, by Charles L. Fridge III, as _CEO_____ of 3000 Smith GP, Inc., a Texas corporation, as general partner of 3000 Smith, Ltd., a Texas limited partnership, on behalf of said limited partnership.

_____
Notary Public in and for
the State of Texas
Name printed:_____
My Commission Expires:_____

CHARLOTTE SANDERS
My Notary ID # 11290845
Expires July 24, 2022

Attached:

Exhibit A-- description of the Real Property

America:0028429/00013:70413922v2

EXHIBIT A

REAL PROPERTY

LOTS THREE (3), FOUR (4) AND NINE (9), IN BLOCK TWENTY-ONE (21) OF THE FAIRGROUNDS ADDITION TO THE CITY OF HOUSTON, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 55, PAGE 222 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS.

America:0028429/00013:70413922v2

RP-2018-560604

RP-2018-560604
# Pages 39
12/17/2018 08:01 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees $164.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically and any blackouts, additions or changes were present at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED in the Official Public Records of Real Property of Harris County, Texas.

COUNTY COURT OF HARRIS COUNTY, TEXAS

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS